United States Court of Appeals,

Fifth Circuit.

No. 95-60186.

James P. MARTIN, Plaintiff-Appellee, Cross-Appellant,

v.

MEMORIAL HOSPITAL AT GULFPORT, Wray Anderson, Mitchell Salloum, Edward Reid, and Myrtis Franke, Defendants-Appellants, Cross-Appellees.

July 10, 1996.

Appeals from the United States District Court for the Southern District of Mississippi.

Before POLITZ, Chief Judge, and DEMOSS and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

The principal question presented by this case is whether a hospital, owned and operated by a municipality and a state subdivision hospital district, and the hospital's board of trustees, are immune from an antitrust claim under the *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943) state action doctrine.

A nephrologist brought this antitrust action against the hospital and its board seeking to enjoin the enforcement of the hospital's contract with the medical supervisor (also a nephrologist) of its End Stage Renal Disease facility (ESRD). The contract grants the medical supervisor authority to plan, organize, conduct and direct the professional ESRD services and to provide and maintain complete physician care of ESRD patients personally or through his designated representative. Subsequently the hospital adopted a resolution formally interpreting the contract to mean

1

that only the medical supervisor or his medical practice associate working under the direction and control of the medical supervisor, for whom the supervisor accepts full responsibility, has the right to perform chronic dialysis in the ESRD.  Because the plaintiff nephrologist is not associated with the medical supervisor in practice, the hospital's enforcement of the contract and its resolution prevents the nephrologist from personally performing chronic renal dialysis for his patients in the hospital's ESRD.

The district court denied the hospital and the board a summary judgment declaring them to be immune from the federal antitrust claim, and they appealed.  We reverse and remand for the entry of a summary judgment dismissing the federal antitrust action.  We have jurisdiction of the appeal under the collateral order doctrine because the district court's ruling conclusively determines the disputed question, resolves an important issue completely separate from the merits of the action, and is effectively unreviewable on appeal from a final judgment.  The state action doctrine immunizes the enforcement of the municipal-state subdivision hospital's exclusive contract with its ESRD supervisor because suppression of competition was the foreseeable result of the state statutes which (1) authorize only a health care provider having obtained a certificate of need to establish an ESRD, and (2) empower the hospital to contract with any individual for the providing of services by or to the hospital regarding any facet of the operation of the hospital or any division or department thereof, or any related activity, and to terminate such contract when deemed in the

best interests of the hospital.

## 1. Facts and Procedural History

The parties by itemizations and responses stipulated to the facts for purposes of the motion for summary judgment. End Stage Renal Disease (ESRD) units are kidney dialysis units in which chronic renal dialysis is performed. Mississippi law prohibits the establishment, expansion, or relocation of an ESRD unless a Certificate of Need is first obtained from the state department of health. The Memorial Hospital at Gulfport obtained certificates of need for several ESRD facilities including the one involved in this case. The hospital began the operation of its ESRD units in 1981. Subsequently, the hospital entered into an exclusive medical director contract with Dr. Douglas Lanier whereby only Dr. Lanier or his designated representative had the right to perform chronic dialysis in the hospital's ESRD units. In 1986, the hospital and Dr. Lanier recruited Dr. James Martin to come to Gulfport to practice with Dr. Lanier as his associate. Dr. Martin was granted full medical staff privileges including the authority to perform chronic dialysis in the hospital's ESRD units. In November 1988, Dr. Martin and Dr. Lanier encountered some differences and terminated their relationship. Dr. Martin began practicing separately from Dr. Lanier. Afterwards, Dr. Martin did not attempt to perform chronic dialysis at the hospital's ESRD unit until March 1989 when he sought to admit a patient for chronic dialysis. The hospital refused to allow him to perform the chronic dialysis basing its action on the exclusive contract with Dr. Lanier. Dr.

3

Martin wrote to the hospital asserting that he had a right to treat patients in the chronic ESRD unit. On June 26, 1989, the board of trustees of the hospital reevaluated whether Dr. Lanier's contract should remain exclusive and passed a resolution that reaffirmed the exclusive medical director contract, interpreting the contract to mean that only a physician in practice with and under the supervision and control of Dr. Lanier could perform chronic dialysis in the ESRD unit. In November f 1990, Dr. Martin's medical staff privileges were renewed with the exception of his right to personally perform chronic dialysis in the ESRD units, which the hospital denied based on the exclusive contract with Dr. Martin. Dr. Martin retained the authority to admit patients to the hospital and perform *acute* ESRD services on them as in-patients, but he must permit the medical supervisor or his associate-designee to perform *chronic* ESRD services for them as out-patients. The Memorial Hospital at Gulfport is a community hospital existing under Miss.Code Ann. § 41-13-10 et seq., and is jointly owned by the City of Gulfport and the Gulfport-West Harrison County Hospital District, a subdivision of the State of Mississippi. *See Enroth v. Memorial Hospital at Gulfport,* 566 So.2d 202, 206 (Miss.1990).

In 1990, Dr. Martin filed suit in the district court alleging that the hospital and its board had violated federal antitrust laws, violated his constitutional due process rights, interfered with his contractual relationships with his patients, and violated the state antitrust laws. The hospital and its board moved for summary judgment on all claims. The district court granted the

4

defendants' motions in part and denied them in part. The hospital's motion for summary judgment was granted only to the extent of dismissing plaintiff's claims for damages under the general prohibition against recovery of damages for antitrust violations from any local government. 15 USCS § 35. The hospital's motion for summary judgment was denied as to all other claims for relief by plaintiff. The motion for summary judgment by the individual hospital board members was denied insofar as the plaintiff's claims for injunctive relief, attorneys fees and court costs under the federal anti-trust laws. As to all other claims for relief asserted by the plaintiff, the motion for summary judgment dismissing these claims against the individual hospital board members was granted.

The hospital and its board appealed from the district court's denial of summary judgment that they are entitled to state action immunity from suit or liability under the federal anti-trust laws. Dr. Martin filed a motion to dismiss the appeal for lack of jurisdiction on the grounds that the district court's ruling was interlocutory and not a final judgment. The appellants contend, however, that the ruling is appealable under the collateral order doctrine. Accordingly, the principal issues for our appellate review are (1) whether the district court's ruling that rejected the defendants' claim of state action immunity is appealable under the collateral order doctrine; and, if so, (2) whether the hospital and its board members are entitled to state action immunity from the plaintiff's federal anti-trust claim.

5

## 2. Jurisdiction

The district court's refusal to grant defendants' motions for summary judgment vindicating their entitlement to state action immunity is appealable under the collateral order doctrine. The district court's ruling meets all of the requisites of an appealable collateral order, viz., that it (a) is "effectively unreviewable" on appeal after trial; (b) conclusively determines the disputed question; and (c) resolves an important issue completely separate from the merits of the action. *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978); *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); *Rauscher Pierce Refsnes, Inc. v. Birenbaum,* 860 F.2d 169 (5th Cir.1988).

Title 28 U.S.C. § 1291 provides for appeal from "final decisions of the district courts." Appeal is thereby precluded "from any decision which is tentative, informal or incomplete," as well as from any "fully consummated decisions, where they are but steps towards final judgment in which they will merge." *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 142-143, 113 S.Ct. 684, 687, 121 L.Ed.2d 605 (1993) (quoting *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. at 546, 69 S.Ct. at 1225 (1949)). Nevertheless a judgment that is not the complete and final judgment in a case will be immediately appealable if it:

> falls in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate

6

consideration be deferred until the whole case is adjudicated. *Id.* Thus, in *Cohen,* the Court held that appeal could be taken from a district court order denying the defendant's motion to compel the plaintiffs in a shareholder derivative suit to post a bond. The Court found the order appealable because it "did not make any step toward final disposition of the merits of the case and [would] not be merged in final judgment" and because, after final judgment, it would "be too late effectively to review the present order, and the rights conferred by the [bond] statute, if it is applicable, will have been lost." *Puerto Rico Aqueduct,* 506 U.S. at 143, 113 S.Ct. at 687.

The Court has held that orders denying individual officials' claims of absolute and qualified immunity, *see Nixon v. Fitzgerald,* 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982); *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) and Eleventh Amendment immunity, *Puerto Rico Aqueduct,* 506 U.S. 139, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993), are among those that fall within the ambit of *Cohen.* In *Mitchell,* the Attorney General of the United States appealed from a district court order denying his motion to dismiss on grounds of qualified immunity. The court of appeals held that the order was not appealable and remanded the case for trial. The Supreme Court reversed, holding that the order denying qualified immunity was collateral order immediately appealable under *Cohen.* The Court found that, absent immediate appeal, the central benefits of qualified immunity—avoiding the costs and general consequences of subjecting public officials to

7

the risks of discovery and trial—would be forfeited, much as the benefit of the bond requirement would have been forfeited in *Cohen.* "The entitlement is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815.

The Court in *Puerto Rico Aqueduct, supra,* held that the same rationale applies to claims of Eleventh Amendment immunity made by states and state entities possessing a claim to share in that immunity. *Id.* 506 U.S. at 144, 113 S.Ct. at 687. Under the terms of the Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State....". U.S. Const. amend. XI. This withdrawal of jurisdiction effectively confers an immunity from suit. *Id.*

We conclude that *Parker v. Brown* state action immunity shares the essential element of absolute, qualified and Eleventh Amendment immunities—"an entitlement not to stand trial under certain circumstances." *Mitchell v. Forsyth,* 472 U.S. at 525, 105 S.Ct. at 2815. The Court in *Parker v. Brown* found "nothing in the language of the Sherman Act or in its history which suggests that its purpose was to restrain a state or its officers or agents from activities directed by its legislature." *Parker v. Brown,* 317 U.S. at 350-351, 63 S.Ct. at 313. Accordingly, the Court concluded:

> In a dual system of government in which, under the Constitution, the states are sovereign, save only as Congress may constitutionally subtract from their authority, an unexpressed purpose to nullify a state's control over its

8

officers and agents is not lightly to be attributed to Congress.

The Sherman Act makes no mention of the state as such, and gives no hint that it was intended to restrain state action or official action directed by a state.

*Id.* 317 U.S. at 351, 63 S.Ct. at 313. While the Eleventh Amendment effectively confers an immunity from suit by a withdrawal of jurisdiction, *Puerto Rico Aqueduct,* 506 U.S. at 143, 113 S.Ct. at 687, the Sherman Act does so by not undertaking to prohibit a sovereign state from imposing an anticompetitive restraint as an act of government. *See Parker v. Brown,* 317 U.S. at 352, 63 S.Ct. at 314. One of the primary justifications of state action immunity is the same as that of Eleventh Amendment immunity—"to prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties," *Puerto Rico Aqueduct,* 506 U.S. at 146, 113 S.Ct. at 689, and to "ensur[e] that the States' dignitary interests can be fully vindicated." *Id.*

A second major conception animating all of the immunity doctrines is that "where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken "with independence and without fear of consequences.' " *Harlow v. Fitzgerald,* 457 U.S. 800, 819, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (quoting *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967)). The "consequences" with which the court was concerned in *Harlow* were not limited to liability for money damages; they also included the general costs of subjecting officials to the risks of trial—distraction of officials from their

9

governmental duties, inhibition of discretionary action, and deterrence of able people from public service. *Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815; *Harlow,* 457 U.S. at 816, 102 S.Ct. at 2737. "Indeed, *Harlow* emphasizes that even such pretrial matters as discovery are to be avoided if possible, as "[i]nquiries of this kind can be peculiarly disruptive of effective government.' " *Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815 (quoting *Harlow,* 457 U.S. at 817, 102 S.Ct. at 2737).

With these concerns in mind, the *Harlow* Court refashioned the qualified immunity doctrine in such a way as to permit the resolution of many insubstantial claims on summary judgment and to avoid subjecting government officials either to the costs of trial or to the burdens of broad-reaching discovery in cases where the legal norms the officials are alleged to have violated were not clearly established at the time. The entitlement is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. *Mitchell,* 472 U.S. at 527, 105 S.Ct. at 2815. Accordingly, the reasoning that underlies the immediate appealability of an order denying absolute, qualified or Eleventh Amendment immunity indicates that the denial of state action immunity should be similarly appealable: in each case, the district court's decision is effectively unreviewable on appeal from a final judgment. *See Praxair, Inc. v. Florida Power & Light Co.,* 64 F.3d 609, (11th Cir.1995), *cert. denied,* --- U.S. ----, 116 S.Ct. 1678, 134 L.Ed.2d 781 (1996); *Commuter Transportation*

*Systems, Inc. v. Hillsborough County,* 801 F.2d 1286, 1289 (11th Cir.1986); *see also Askew v. DCH Regional Health Care Authority,* 995 F.2d 1033, 1036 (11th Cir.), *cert. denied,* --- U.S. ----, 114 S.Ct. 603, 126 L.Ed.2d 568 (1993); *Segni v. Commercial Office of Spain,* 816 F.2d 344, 345 (7th Cir.1987):

> Where the right asserted by way of defense to a lawsuit is (or includes) a right not to bear the burden of the suit itself, regardless of outcome, the denial of that right, as by denying a motion to dismiss the suit, is appealable immediately by virtue of the collateral order doctrine. An appeal after judgment would come too late to protect the right. It is on the basis of this reasoning that the rejection of a double-jeopardy defense, the rejection of a defense of a public official's qualified immunity from suit, and the rejection of a witness's absolute immunity from suit, are appealable immediately. *See Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); *Mitchell v. Forsyth,* 472 U.S. 511, 524-30, 105 S.Ct. 2806, 2814-18, 86 L.Ed.2d 411 (1985); *San Filippo v. U.S. Trust Co. of New York, Inc.,* 737 F.2d 246, 254 (2d Cir.1984).

*But see Huron Valley Hospital v. City of Pontiac,* 792 F.2d 563 (6th Cir.), *cert. denied,* 479 U.S. 885, 107 S.Ct. 278, 93 L.Ed.2d 254 (1986) (Contains contrary, less persuasive dicta but is inapposite because the requirement that the immunity claim be completely separate from the merits of the original claim was not met).

An appealable interlocutory decision must satisfy two additional criteria: it must conclusively determine the disputed question and that question must involve a claim of right separable from, and collateral to, rights asserted in the action. *Mitchell,* 472 U.S. at 527, 105 S.Ct. at 2816. The denial of a state or state entity's motion for dismissal or summary judgment on the ground of state action immunity easily meets these requirements: (i) denials of states' and state entities' claims to state action immunity

clearly purport to be conclusive determinations that they have no right not to be sued under federal antitrust laws for actions by the state or its officers or agents directed by its legislature; and (ii) a claim of such state action immunity is conceptually distinct from the merits of the plaintiff's claim that he has been damaged by the defendants' alleged violation of the federal antitrust laws. An appellate court reviewing the denial of the state or state entity's claim of immunity need not consider the correctness of the plaintiff's version of the facts, nor even determine whether the plaintiff's allegations actually state a claim. In a case involving alleged anticompetitive acts by a state's municipality or subdivision, all it need determine is a question of law: whether the state entity acted pursuant to a clearly articulated and affirmatively expressed state policy.

Accordingly, we hold that a district court's denial of a claim of state action immunity, to the extent that it turns on whether a municipality or subdivision acted pursuant to a clearly articulated and affirmatively expressed state policy, is an appealable "final decision" within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment.

### 3. The *Parker v. Brown* State Action Doctrine

In *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), the Supreme Court held that Congress did not intend for the antitrust laws to apply to states acting in their capacities as sovereigns. In subsequent cases, the Court extended the state action doctrine to cover, under certain circumstances, acts by

12

private parties that stem from state power or authority, *California Retail Liquor Dealers Association v. Midcal Aluminum, Inc.,* 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980), as well as acts by political subdivisions, cities and counties. *Town of Hallie v. City of Eau Claire,* 471 U.S. 34, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985). Congress endorsed and expanded the state action doctrine by the Local Government Antitrust Act of 1984, which protects municipalities against antitrust damage claims. 15 USCS § 35; 16E Julian O. von Kalinowski, *Business Organizations-Antitrust Laws and Trade Regulations* § 40.01 (1996), (hereafter von Kalinowski).

The Supreme Court in *Parker v. Brown,* found the Sherman Act inapplicable to actions by a state because "[t]here is no suggestion of a purpose to restrain state action in the Act's legislative history." *Parker v. Brown,* 317 U.S. at 351, 63 S.Ct. at 313. To the contrary, the Act was found to be intended only to prohibit anticompetitive conduct by "business combinations." *Id.* 317 U.S. at 351, 63 S.Ct. at 313. Justice Stone's opinion in *Parker* makes clear that the decision regarding the reach of the antitrust laws was predicated on principles of federalism and state sovereignty stemming from the Supremacy Clause of the Constitution. von Kalinowski, § 40.02[1] at 40-6. The Court concluded that "[i]n a dual system of government, an unexpressed intent to nullify a state's control over its officers and agents is not lightly to be attributed to Congress." *Parker,* 317 U.S. at 351, 63 S.Ct. at 313.

A.

Application of the *Parker* Doctrine to Actions by Municipalities and Other Political Subdivisions

13

In *Town of Hallie v. City of Eau Claire,* 471 U.S. 34, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985), the Supreme Court clarified the application of the *Parker* doctrine to actions by municipalities and other political subdivisions. Municipalities are not automatically immune under *Parker,* because they are not sovereign. *Town of Hallie,* 471 U.S. at 38, 105 S.Ct. at 1716. *See also City of Lafayette v. Louisiana Power and Light Co.,* 435 U.S. 389, 412, 98 S.Ct. 1123, 1136, 55 L.Ed.2d 364 (1978). But a municipality or subdivision of the state is immune when it acts pursuant to a clearly articulated and affirmatively expressed state policy. *Town of Hallie,* 471 U.S. at 45-46, 105 S.Ct. at 1720. Furthermore, the active state supervision prerequisite to a private party's immunity should not be imposed in cases in which the actor is a municipality. *Town of Hallie,* 471 U.S. at 47, 105 S.Ct. at 1720. The court explained:

> [T]he requirement of active state supervision serves essentially an evidentiary function: it is one way of ensuring that the actor is engaged in the challenged conduct pursuant to state policy.... Where a private party is engaging in the anticompetitive activity, there is real danger that he is acting to further his own interests, rather than the governmental interests of the State. Where the actor is a municipality, there is little or no danger that it is involved in a private price-fixing arrangement.

*Town of Hallie,* 471 U.S. at 46-47, 105 S.Ct. at 1720.

The *Hallie* Court also "fully considered ... how clearly a state policy must be articulated for a municipality to be able to establish that its anticompetitive activity constitutes state action." *Town of Hallie,* 471 U.S. at 40, 105 S.Ct. at 1717. If the city acts pursuant to a clearly articulated state statutory

14

scheme, it is irrelevant that the statutes make no express mention of anticompetitive conduct. It is sufficient that these statutes demonstrate that the state legislature clearly contemplated anticompetitive conduct in the provision of governmental services. *Town of Hallie,* 471 U.S. at 40, 105 S.Ct. 1717; see von Kalinowski § 40.03[z] at 40-45. The Court explained:

> The statutes clearly contemplate that a city may engage in anticompetitive conduct [by acquiring a monopoly over the provision of sewage treatment services and by tying the provision of those services to the provision of sewage collection and transportation services.] Such conduct is a foreseeable result of empowering the City to refuse to serve unannexed areas. It is not necessary ... for the state legislature to have stated explicitly that it expected the city to engage in conduct that would have anticompetitive effects.

*Town of Hallie,* 471 U.S. at 42, 105 S.Ct. at 1718. Also, the Court explicitly ruled that a municipality need not show that it was compelled to engage in anticompetitive activity in order to be immune. *Town of Hallie,* 471 U.S. at 45-46, 105 S.Ct. at 1719-1720; von Kalinowski, *Id.* "This is so because where the actor is a municipality, acting pursuant to a clearly articulated state policy, compulsion is simply unnecessary as an evidentiary matter to prove that the challenged practice constitutes state action." *Town of Hallie,* 471 U.S. at 45-46, 105 S.Ct. 1720.

The Supreme Court in *City of Columbia v. Omni Outdoor Advertising, Inc.,* 499 U.S. 365, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991) elaborated on the *Hallie* "clear articulation" standard. The *Omni* court said:

> We have rejected the contention that [the clear articulation] requirement can be met only if the delegating statute explicitly permits displacement of competition. It is enough,

15

we have held, if the suppression of competition, is the "foreseeable result" of what the state authorized.

*Omni,* 499 U.S. at 372-373, 111 S.Ct. at 1350. The Court found that the zoning regulation challenged in *Omni* "amply" satisfied this standard because the "very purpose of zoning regulation is to displace unfettered business freedom in a manner that regularly has the effect of preventing normal acts of competition." 499 U.S. at 373, 111 S.Ct. at 1350; *see* von Kalinowski, § 40.03[z] at 40-45.

Lower courts have applied *Town of Hallie* standards not only to municipalities but also to counties and other public entities and offices. *See* von Kalinowski § 40.03[2] at 40-46, 40-47 and 40-48 and authorities cited therein. *Eg., Independent Taxicab Drivers' Employees v. Greater Houston Transportation Co.,* 760 F.2d 607 (5th Cir.) (city was immune for having granted taxi-cab company exclusive right to provide airport's taxicab transportation where statute granted city regulatory power over taxi-cab industry and separate statute specifically authorized municipality to grant contracts for services at airports), *cert. denied sub nom. Arrow Northwest Inc. v. Greater Houston Transp. Co.,* 474 U.S. 903, 106 S.Ct. 231, 88 L.Ed.2d 230 (1985).

B.

Application of *Parker v. Brown* State Action Doctrine to the Actions of the Memorial Hospital at Gulfport, Jointly Owned by a Municipality and Subdivision of the State

Applying the *Hallie* and *Omni* precepts to the present case, we conclude that the Memorial Hospital at Gulfport is immune under the *Parker v. Brown* state action doctrine from claims that it violated the federal antitrust laws by entering an exclusive contract with

16

Dr. Lanier granting him the sole authority as Director or through his designee to operate the hospital's ESRD.

The Memorial Hospital at Gulfport is a subdivision of the state or municipal corporation thereof within the meaning and contemplation of Miss.Code Ann. §§ 41-12-10 *et seq.* (1972 and supplements). *Enroth v. Memorial Hospital at Gulfport,* 566 So.2d 202, 205 (Miss.1990). Consequently, to bring itself under the aegis of the *Parker v. Brown* immunity doctrine the hospital need prove only that it acted pursuant to a clearly articulated and affirmatively expressed state policy. The hospital may satisfy this requirement by showing a statutory scheme that demonstrates that the state legislature clearly contemplated the challenged anticompetitive conduct or that suppression of competition was the foreseeable result of what the state authorized. It is not necessary for the state legislature to have compelled or explicitly permitted the hospital to enter exclusive contracts having anticompetitive effects, *Independent Taxicab Drivers',* 760 F.2d at 610; it is enough if such suppression of competition was the "foreseeable result" of what the state authorized. *Omni Outdoor Advertising,* 499 U.S. at 372-373, 111 S.Ct. at 1350; *Town of Hallie,* 471 U.S. at 42, 45-46, 105 S.Ct. 1718-1720.

The Mississippi statutes demonstrate that the state legislature clearly contemplated anticompetitive conduct by (1) authorizing a hospital to enter an exclusive contract with a single individual to operate any aspect, division or department of its operations, including its ESRD facility, and (2) requiring a

17

hospital to obtain a certificate of need, based on criteria such as population base and projected caseload, prior to establishing a health facility, including an ESRD facility. *See Mississippi State Dept. of Health v. Golden Triangle Regional Medical Center,* 603 So.2d 854 (Miss.1992) (certificate of need to establish cardiac catheterization services).

The Miss.Code Annotated § 41-13-35(5)(g) (1972) authorizes the board of trustees of a community hospital to contract with any individual for the providing of services by or to the community hospital regarding any facet of the operation of the hospital or any division or department thereof, or any related activity, and to terminate said contracts when deemed in the best interests of the community hospital.[1]  The Mississippi Health Care Certificate of Need Law of 1979 prohibits the construction, development, establishment or relocation of a health care facility without obtaining the required certificate of need.  Miss.Code Ann. § 41-7-

---

[1]§ 41-13-35, in part provides:

(5) The power of the board of trustees shall specifically include, but not be limited to, the following authority:

(g) To contract by way of lease ... or otherwise, with any agency, department or other office of government or any individual, partnership, corporation, owner, other board of trustees, or other health care facility, for the providing of property, equipment or services by or to the community hospital or other entity or regarding any facet of the construction, management, funding or operation of the community hospital or any department or division thereof, or any related activity, including without limitation, shared management expertise or employee insurance and retirement programs, and to terminate said contracts when deemed in the best interest of the community hospital.

191(1)(a) & (b) (1979). A certificate of need shall not be granted or issued unless the proposal has been reviewed for consistency with the specifications and criteria established by the State Department of Health and substantially complies with the projection of need as reported in the state health plan in effect at the time the application for the proposal was submitted. § 41-7-193. A "Certificate of Need" means a written order of the State Department of Health setting forth the affirmative finding that a proposed health facility, including an ESRD facility, sufficiently satisfies the plans, standards and criteria prescribed for such service or other project by Section 41-7-171 et seq., and by rules and regulations promulgated thereunder by the State Department of Health. *Id.* at § 41-7-173(b). "End stage renal disease (ESRD) facilities" means kidney disease treatment centers, which include freestanding hemodialysis units and limited care facilities. *Id.* at § 41-7-173(h)(v). "Health care facility" includes, *inter alia,* end stage renal disease (ESRD) facilities. *Id.* at § 41-7-173(h).

The *Hallie-Omni* standards are amply met here. The very purpose of a hospital's exclusive contract with a physician to supervise a special unit and perform its critical functions is to obtain the doctor's dedicated services by displacing unfettered professional medical freedom in a manner that prevents normal acts of competition, particularly on the part of other physicians qualified to supervise and operate such a unit. Likewise, a certificate of need law restricting the establishment of new health facilities including ESRD facilities necessarily protects existing

19

facilities against competition from newcomers. Certificate of need programs are federally funded, state-administered regulatory mechanisms providing for review and approval by health planning agencies of capital expenditures and service capacity expansion by hospitals and other health care facilities. Their primary purpose is to discourage unnecessary investment in health care facilities and to channel investment so as to preserve and improve the quality of institutional health care. See James B. Simpson, *Full Circle: The Return of Certificate of Need Regulation of Health Facilities to State Control,* 19 Ind.L.Rev. 1025, 1028-1033 (1986).

The hospital's allegedly anticompetitive conduct could have been reasonably anticipated by the Mississippi Legislature when it gave the hospital the power to enter a contract with an individual physician to operate any aspect, division or department of its operations. The state's certificate of need program necessarily displaces unfettered competition of physicians operating health facilities and restricts the entry of medical facilities and services to those administratively found to be medically necessary and affordable. Having concluded that the allegedly anticompetitive results were foreseeable under the state action doctrine, we reverse the district court's holding that the state action doctrine fails to immunize the hospital's actions in entering an exclusive contract for the operation of its ESRD unit.

4. The District Court's Decision

The district court concluded that the hospital and its board were not entitled to state action immunity because the displacement

20

or suppression of competition was not a foreseeable result of the state statutory scheme. We do not agree with the district court's interpretation of the state statutes. As we explained earlier in this opinion, § 41-13-35(g) of the Mississippi Code does not merely provide general authority for the hospital to enter contracts. The statute clearly, affirmatively and articulately empowers the hospital to contract with any individual for the providing of services by or to the hospital regarding any facet of the operation of the hospital or any division or department thereof, or any related activity. It is clearly a foreseeable result of what the statute authorizes that a hospital would enter an exclusive contract with an individual physician to supervise and perform the critical functions of its ESRD units. The very purpose of the statutory authorization is to enable the hospital to displace unfettered competition among physicians in the performance of critical operations such as chronic dialysis in ESRD units so as to promote efficiency of health care provision, reduce the hospital's supervisory burden, and control its exposure to liability. Similarly, the certificate of need law, § 41-7-171 et seq., restricts the establishment and operation of ESRDs and necessarily protects existing units against some competition from newcomers.

The Supreme Court has "rejected the contention that this requirement [the clear articulation of a state policy to authorize anticompetitive conduct] can be met only if the delegating statute explicitly permits the displacement of competition ... It is enough ... if suppression of competition is the "foreseeable result' of

what the statute authorizes...." *City of Columbia v. Omni Outdoor Advertising, Inc.,* 499 U.S. 365, 372-373, 111 S.Ct. 1344, 1349-1350, 113 L.Ed.2d 382 (1991); *Independent Taxicab Drivers',* 760 F.2d at 610. That condition is amply met here.

## 5. Disposition of Other Issues

The hospital contests the trial court's refusal to dismiss plaintiff Dr. Martin's claims for damages under 42 U.S.C. § 1983, for deprivation of Martin's constitutionally protected property and liberty rights, for damages under state antitrust laws and interference with existing and prospective business relations claims. We lack jurisdiction to reach the merits of that appeal. Although the collateral order doctrine allows review of the district court's denial of state action immunity to the defendants against the federal antitrust claims, that allowance does not confer "pendent appellate jurisdiction" over the other issues. Although in *Swint v. Chambers County Commission,* --- U.S. ----, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995), the Court implied that in rare circumstances pendent appellate jurisdiction may be proper—if issues were "inextricably intertwined" or where "review of the former was necessary to ensure meaningful review of the latter", *id.* at ----, 115 S.Ct. at 1208—defendants have not advanced reasons for review more compelling than those rejected by the Court in *Swint. See also Woods v. Smith,* 60 F.3d 1161 (5th Cir.1995), *cert. denied sub nom. Palermo v. Woods,* --- U.S. ----, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996); *Silver Star Enterprises, Inc. v. M/V Saramacca,* 19 F.3d 1008 (5th Cir.1994).

22

Dr. Martin filed a cross-appeal contending that the district court erred in deciding that the Local Government Antitrust Act shields the individual board members with absolute immunity from federal antitrust damages; the individual board member defendants are entitled to summary judgment under qualified immunity as to the constitutional due process claims of the plaintiff; and the individual board member defendants are entitled to qualified immunity as to the plaintiff's state claims. For the same reasons expressed above, we have no jurisdiction to consider the court's interlocutory orders.

## Conclusion

The judgment denying summary judgment on the grounds of *Parker v. Brown* state action immunity to the hospital and its individual board members is REVERSED and the case is REMANDED to the district court for the entry of such a summary judgment. The other appeals and cross-appeals are DISMISSED for lack of appellate jurisdiction.

*  *  *  *  *  *

*  *  *  *  *  *

23