**SURGICAL CARE CENTER OF HAMMOND, L.C., d/b/a St. Luke's SurgiCenter, Plaintiff–Appellant,**

v.

**HOSPITAL SERVICE DISTRICT · NO. 1 OF TANGIPAHOA PARISH, d/b/a North Oaks Medical Center, and Quorum Health Resources, Inc., Defendants–Appellees.**

No. 97–30887.

United States Court of Appeals, Fifth Circuit.

Aug. 27, 1998.

**221.**

Craig Lewis Caesar, Donna Guinn Klein, McGlinchey, Stafford & Lang, New Orleans, LA, for Plaintiff–Appellant.

Robert S. Rooth, L. Kenneth Krogstad, Wilbur Anthony Toups, III, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, LA, Daniel M. Mulholland, III, Susan M. Lapenta, Pittsburgh, PA, for Defendants–Appellees.

Before KING, SMITH and PARKER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Surgical Care Center of Hammond ("St. Luke's") sued Hospital Service District No. 1 of Tangipahoa Parish ("North Oaks") and Quorum Health Resources, Inc. ("Quorum"), under the Sherman Act, 15 U.S.C. § 2, charging various anticompetitive practices. The district court found that North Oaks and Quorum were entitled to state action immunity from the antitrust laws and dismissed the complaint. We affirm.

I.

St. Luke's is an outpatient surgery center in Hammond, Louisiana, that opened for business in 1996. North Oaks, a hospital service district created pursuant to Louisiana statute, is a neighbor of St. Luke's. North Oaks's hospital is located about a quarter mile from St. Luke's and is managed by Quorum, a private, for-profit hospital management firm. In addition to its acute care services, North Oaks offers both inpatient and outpatient surgery.

In 1997 St. Luke's filed the instant suit, alleging that North Oaks enjoyed monopoly power and was conspiring with Quorum to engage in unlawful anticompetitive practices aimed at driving St. Luke's from the market. St. Luke's claimed that North Oaks exercised monopoly power in the market for acute care services and surgical care and was seeking to attain monopoly power in the outpatient surgical care submarket. St. Luke's alleged

violations of the Sherman Act, the Louisiana Monopolies Law, LA. REV. STAT. § 51:123, and the Louisiana Unfair Trade Practice and Consumer Protection Law, LA. REV. STAT. § 51:1405, 1409.

Specifically, St. Luke's charged that North Oaks, by leveraging its power in the acute care market and inpatient surgical care submarket, was pressuring managed care plans to sign exclusive contracts. St. Luke's characterized these deals as unlawful tying arrangements that stifled competition in the outpatient surgical care submarket.[1]

The district court granted North Oaks and Quorum's motion to dismiss, concluding that both were insulated from antitrust liability under the state action doctrine. It then dismissed St. Luke's state law claims for want of jurisdiction.

## II.

### A.

We review *de novo* the dismissal of a complaint under FED. R. CIV. P. 12(b)(6). *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir.1996). We must construe all allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts. *Word of Faith World Outreach Ctr. Church v. Sawyer*, 90 F.3d 118, 121 (5th Cir.1996).

### B.

The Supreme Court first recognized state action immunity to antitrust liability in *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), holding that a state agricultural program did not violate the Sherman Act, even though the program restricted competition. The Court premised its holding on principles of federalism and state sovereignty, concluding: "We find nothing in the language of the Sherman Act or in its history which suggests that its purpose was to restrain a state or its officers or agents from activities directed by its legislature." *Id.* at 350–51, 63 S.Ct. 307. The Sherman Act, the Court reasoned, targeted *private* restraints of trade rather than restraints imposed by state legislatures. *Id.*

■ Four decades later, the Court refined the state action doctrine in *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985). There, the Court expanded the state action doctrine to include acts by political subdivisions that stem from state authority. Although subdivisions, because they are not sovereign, are not *automatically* immune, they nonetheless can claim immunity when they "demonstrate that [they are] engaging in the challenged activity pursuant to a clearly expressed state policy" to displace competition. *Id.* at 40., 105 S.Ct. 1713 The Court held that the legislature need not state explicitly, in the statute or legislative history, its intention or expectation that the delegated action have anticompetitive effects. Instead, a municipality is entitled to *Parker* immunity when the anticompetitive action is the "foreseeable result" of the legislation. *Id.* at 42, 105 S.Ct. 1713. In other words, we ask whether "the legislature contemplated the kind of action complained of." *Id.* at 44, 105 S.Ct. 1713 (quoting *Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 415, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978)).[2]

---

1. St. Luke's alleged other unlawful trade practices, including North Oaks's refusal to enter into an emergency blood type-and-cross match agreement, its refusal to enter into a standard patient transfer agreement, its attempt to intimidate North Oaks personnel from working at St. Luke's, its refusal to allow nurses from St. Luke's to attend training courses at North Oaks, its attempt to form a joint alliance with an independent physician association to negotiate all contract rates and terms with health care insurers, its purchase and funding of family practices in hopes of channeling their patients to North Oaks, and its attempt to undermine the practices of two St. Luke's doctors. In its brief, however, St. Luke's focuses on the exclusive contracts as the most egregious of North Oaks's alleged anticompetitive practices.

2. The Court reaffirmed the *Town of Hallie* test in *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 372–73, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991), where it observed:

 We have rejected the contention that [the clear articulation] requirement can be met only if the delegating statute explicitly permits the displacement of competition. It is enough, we have held, if suppression of competition is the "foreseeable result" of what the statute authorizes.

We construed *Parker* immunity in *Martin v. Memorial Hosp.*, 86 F.3d 1391 (5th Cir. 1996), a case arising under strikingly similar facts. In *Martin*, we concluded that a hospital district was entitled to antitrust immunity when it entered into an exclusive contract with a doctor to operate its facility for end stage renal disease ("ESRD"). The plaintiff, another doctor, complained that the exclusive contract barred him from treating his own patients in the hospital facility. The hospital district pointed to the Mississippi statute authorizing it to enter exclusive contracts and requiring a certificate of need prior to establishing an ESRD facility. We agreed that, based on this statute, the Mississippi legislature "clearly contemplated anticompetitive conduct." *Id.* at 1399. Accordingly, the hospital district was entitled to *Parker* immunity.

### III.

 The instant case centers on a Louisiana statute, LA. REV. STAT. § 46:1051 *et seq.*, which authorizes the creation, and specifies the powers and duties, of hospital districts. St. Luke's argues that while the statute entitles hospital districts to enter into contracts, the Louisiana legislature did not authorize or foresee the extent and magnitude of the anticompetitive conduct in which North Oaks and Quorum allegedly engaged. North Oaks and Quorum dispute this reading of the statute and argue that *Martin* controls this case. Because North Oaks is a political subdivision of the state of Louisiana, *see* LA.REV.STAT. § 46:1064(A), it is entitled to *Parker* immunity if its anticompetitive conduct is the foreseeable result of the statutory scheme.

### A.

We begin with the statutory language. LA. REV. STAT. § 46:1077 provides that a hospital service district "may contract with or engage in a joint venture with any person, corporation, partnership, or group of persons to offer, provide, promote, establish, or sell any hospital health service." This broad statutory language parallels the language we deemed sufficient to confer immunity in *Martin*:

> The [Mississippi] statute clearly, affirmatively and articulately empowers the hospital to contract with any individual for the providing of services by or to the hospital regarding any facet of the operation of the hospital or any division or department thereof, or any related activity. It is clearly a foreseeable result of what the statute authorizes that a hospital would enter an exclusive contract with an individual physician to supervise and perform the critical functions of the ESRD units.

*Id.* at 1400.[3] Following *Martin*, which linked (1) the power to contract with (2) the foreseeability of a hospital entering into exclusive contracts, we hold that the Louisiana hospital statute similarly contemplates that a hospital service district might enter into exclusive contracts with health care providers.

### B.

Buttressing our conclusion is the plain language of LA. REV STAT. § 46:1071, which sets forth the legislative findings and purpose. (No comparable provision appeared in the Mississippi statute, which makes *Parker* immunity even more appropriate here.) This

---

3. The Mississippi statute provided that a hospital may:

> contract by way of lease ... or otherwise, with any agency, department or other office of government or any individual, partnership, corporation, owner, other board of trustees, or other health care facility, for the providing of property, equipment or services by or to the community hospital or other entity or regarding any facet of the construction, management, funding or operation of the community hospital or any department or division thereof, or any related activity, including, without limitation, shared management expertise or employee insurance and retirement programs, and to ter-

minate said contracts when deemed in the best interests of the community hospital.

MISS.CODE. ANN. § 41-13-35(5)(g). While the Mississippi statute is broader in that it is not confined to "hospital health services," the anticompetitive practices alleged in the instant case concern the provision or promotion of health services, so this distinction is not implicated here. Moreover, the Louisiana statute defines "hospital health services" rather broadly. *See* LA. REV. STAT. § 46:1072(1) (" 'Hospital health services' means but is not limited to any clinical, diagnostic, or rehabilitation service and any administrative, managerial, or operational service incident thereto.").

section, which appears under the subpart heading "ENHANCED ABILITY TO COMPETE," provides in its entirety:

> The legislature hereby finds that the market for hospital and health care services is becoming increasingly competitive. The legislature finds that the hospital and other health care providers are contracting to engage in economic joint ventures or form partnerships to offer integrated health care services to the public. The legislature finds that this increasing competition is forcing hospitals and other health care providers to develop market strategies and strategic plans to effectively compete. *The legislature further finds that hospital service districts are presently at a competitive disadvantage.* The legislature hereby declares that the purpose of R.S. 46:1071 through 1076 is to enhance the ability of a hospital service district to compete effectively and equally in the market for health care services. Towards this end, the provisions of R.S. 46:1071 through 1076 shall be construed liberally.

LA. REV. STAT. § 46:1071 (emphasis added). Given that the *Martin* court concluded that anticompetitive activity was foreseeable even in the absence of a legislative finding that hospitals were competitively disadvantaged, the Louisiana statute presents a far stronger case for foreseeability.

### C.

St. Luke's seeks to distinguish *Martin* on the ground that here, the hospital has signed exclusive contracts with health care *plans*, whereas in *Martin*, the hospital signed exclusive contracts with individual *providers*. We agree with the district court that St. Luke's has not shown that this distinction is legally relevant. We must ask what conduct is foreseeable under the statute, and LA. REV. STAT. § 46:1077 provides that a hospital "may contract ... with any person, corporation, part- nership, or group of persons." This language belies St. Luke's distinction between plans and providers.

Moreover, nothing in *Martin* suggests that the holding was contingent on this distinction. Although exclusive contracts with health care plans may produce greater anticompetitive effects, the key issue, for purposes of *Parker* immunity, is not the magnitude of the effect but rather whether the effect was contemplated by the legislature. *Parker*'s focus is on federalism, not economics: It commands judicial deference to regulatory schemes enacted by state legislatures, notwithstanding a court's views on the economic wisdom of the challenged regulation.[4]

The Fourth Circuit considered a similar antitrust challenge in *Coastal Neuro–Psychiatric Assoc., P.A. v. Onslow Mem'l Hosp.*, 795 F.2d 340 (4th Cir.1986). There, a physicians' association argued that a county hospital had violated the Sherman Act by entering into exclusive contracts with radiologists. The court held that the hospital was entitled to *Parker* immunity because the North Carolina statute contemplated anticompetitive conduct in allowing hospitals to decide which physicians could practice in them. *Id.* at 341–42, 63 S.Ct. 307. The court noted that restricting qualified doctors from practicing at the hospital "may or may not be a salutary result. It is clear, however, from *Town of Hallie* that the choice is that of North Carolina and its local hospital boards of governance." *Id.* at 342.

Several district courts have granted hospital districts *Parker* immunity based on the Louisiana statute. *See Willis–Knighton Med. Ctr. v. City of Bossier*, 2 F.Supp.2d 842, 849–50 (W.D.La. 1997) (applying *Martin* and concluding that "the delegation of contractual authority, standing alone, [is] enough to immunize the municipal hospital from any antitrust liability that might otherwise arise from executing an exclusive services contract"),

---

4. *See* PHILLIP E. AREEDA & HERBERT HOVENKAMP, ANTITRUST LAW ¶ 212.1f, at 146–47 (Supp.1997):

> [T]he governing principle in this area has been federalism rather than economic rationality.... The Court's view of federalism has left enormous discretion to the states to displace competition. As long as a state announces its policy to displace the antitrust laws with adequate clarity and actively supervises the results, *Parker* allows it to do whatever it pleases, no matter how anticompetitive the consequences.

The active state supervision requirement applies only to private parties; it is not implicated in the instant case. *See Town of Hallie*, 471 U.S. at 38, 105 S.Ct. 1713; *Martin*, 86 F.3d at 1397–98.

*appeal pending; Fremaux v. Board of Comm'rs*, No. 96–1225, 1997 WL 159483, at \*\*3–4, 1997 U.S. Dist. LEXIS 4098, at \*8–\*10 (E.D.La. Mar. 26, 1997) (applying *Martin* and concluding that hospital's entering into an exclusive contract was foreseeable). In two district court cases from Florida, both of which St. Luke's says were wrongly decided, the courts construed *Parker* broadly and immunized a broad swath of anticompetitive conduct by hospitals. *See Central Fla. Clinic v. Citrus County Hosp. Bd.*, 738 F.Supp. 459 (M.D.Fla.), *aff'd*, 888 F.2d 1396 (11th Cir.1989) (unpublished); *Hospital Dev. & Serv. Corp. v. North Broward Hosp. Dist.*, 619 F.Supp. 535 (S.D.Fla.1985).

### D.

In sum, we conclude that the appellees are entitled to *Parker* immunity. The exclusive nature of the contracts was reasonably foreseeable by the Louisiana legislature. As to the other alleged unlawful trade practices, we agree with the district court that while North Oaks may have engaged in "cutthroat" and "hardball" business practices by trying to lure patients to North Oaks, it is conduct that is a reasonably foreseeable result of the Louisiana statute.

### IV.

St. Luke's argues that even if North Oaks is entitled to *Parker* immunity, Quorum—because it is a private actor—is not. We disagree. LA. REV. STAT. § 46:1055(B) provides that hospital service districts "may enter into a special services agreement with any person, including ... a hospital management firm ... to manage, operate, and administer a hospital or hospitals, or any part thereof, under the control of the commission for the benefit of the hospital's service district." Because North Oaks's agreement with Quorum is expressly authorized by the statute, and because Quorum operates the hospital as an agent and for the benefit of the service district, Quorum is protected by North Oaks's *Parker* immunity.[5]

AFFIRMED.

**5.** Although St. Luke's hints in its brief that Quorum may have economic interests independent of North Oaks's, it failed to raise this argument before the district court.

KING, Circuit Judge, specially concurring:

Although I am troubled by our opinion in *Martin v. Memorial Hosp.*, 86 F.3d 1391 (5th Cir.1996), I believe it controls the outcome here, and I therefore concur in Judge Smith's opinion for the panel.