IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-30887
_____


SURGICAL CARE CENTER OF HAMMOND, L.C.,
doing business as St Luke's Surgicenter;

                                        Plaintiff-Appellant

                    versus

HOSPITAL SERVICE DISTRICT NO. 1 OF TANGIPAHOA PARISH,
doing business as North Oaks Medical Center;
QUORUM HEALTH RESOURCES, INCORPORATED

                                        Defendants-Appellees


_____

Appeal from the United States District Court
for the Eastern District of Louisiana
_____

March 24, 1999

Before KING, Chief Judge, and POLITZ, JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH, DUHÉ, WIENER, BARKSDALE, EMILIO M. GARZA, DeMOSS, BENAVIDES, STEWART, PARKER, and DENNIS, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

In this antitrust case against a hospital district in Hammond, Louisiana, filed by a privately owned competitor, the district court concluded that the state legislature had granted the hospital district immunity from federal antitrust laws, dismissed those claims, and declined to exercise supplemental jurisdiction over related state claims charging violations of state antitrust and consumer protection laws. A panel of this court affirmed,

believing it was bound to do so by prior decisions of the court. We took the case en banc and now reverse the judgment of dismissal and remand to the district court for further proceedings. The Louisiana legislature did not make sufficiently clear an intent to exercise its authority to insulate its creature of state government from the constraints of the Sherman Antitrust Act, an authority recognized in <u>Parker v. Brown</u>, 317 U.S. 341 (1943), and progeny, including <u>Town of Hallie v. City of Eau Claire</u>, 471 U.S. 34 (1985).

I

Through its North Oaks facility, Hospital Service District No. 1 of Tangipahoa Parish offers acute care and surgical services. North Oaks is managed for the district by Quorum, a privately owned management firm engaged in the business of managing hospitals for profit. The state-owned hospital competes with St. Luke's, a privately owned hospital located only a quarter mile away and the only outpatient surgery center in the immediate area.

St. Luke's filed this suit in 1997 alleging that North Oaks enjoyed a monopoly in the local market for acute care services and was attempting to extend its monopoly to outpatient surgical care. The complaint also outlined the implementing path of the effort, marked by various anticompetitive acts. These acts included pressuring five of the seven largest managed care plans in the market into contracts calculated to exclude St. Luke's from the market for outpatient surgical care. Specifically, North Oaks allegedly used its monopoly power to ensure that its contracts with

2

the plans included provisions for exclusivity and tying, in violation of the Sherman Act and the Louisiana Monopolies Law, La. Rev. Stat. § 51:123, and the Louisiana Unfair Trade Practice and Consumer Protection Law, id. §§ 51:1405 to 51:1409.

North Oaks and Quorum moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), pointing to the Louisiana Service District Law, La. Rev. Stat. §§ 45:1051 et seq., which establishes the hospital service districts as political subdivisions of the State of Louisiana. See id. § 46:1064(A). North Oaks urged that as a political subdivision it enjoyed "immunity" from the Sherman Antitrust Act as announced in Parker v. Brown, 317 U.S. 341 (1943), and as applied by this court in Martin v. Memorial Hospital, 86 F.3d 1391 (5th. Cir. 1996). Quorum denied it was an independent player, asserting that it was only the agent for the district, an entity enjoying immunity from federal antitrust laws. The district court granted the motion, dismissing both defendants.

The district court conceived its question as "whether the alleged noncompetitive activities of North Oaks may be fairly considered the foreseeable result of the state policy articulated in the Louisiana Hospital Service District Law." It concluded that the exclusive contracts were the "foreseeable result" of statutory authority to contract "with any entity to promote the delivery of health services." Other alleged anticompetitive practices were found to be either "foreseeable results of the statutory license for hospitals to develop confidential marketing strategies," or

3

"clearly in the realm of the routine business decisions concerning day-to-day operations to which the state action immunity should apply." The court concluded that Quorum, although not a political subdivision of the state, acted only as an agent of the district and "therefore requires no separate grant of immunity." St. Luke's appealed.

A panel of this court agreed with the district court that the hospital district enjoyed immunity. Applying our decision in Martin, it held that North Oaks was immune because the alleged anticompetitive acts were the foreseeable results of the statutory grant of authority to the hospital district. Chief Judge King specially concurred, "troubled by [this court's] opinion in Martin". As we will explain, the district court's analysis reflected its reading of Martin, a reading we are persuaded is not faithful to the foreseeability test of the Supreme Court. However justified by uncertainties in our case law, any reading of Martin that finds immunity in a state legislature's general grant to its agency of authority to conduct its affairs is incorrect. As we will explain, a state may express its will as it prefers, but insulation of its instruments from the Sherman Act must be fairly signaled.

## II

Under Title 46 a board of five commissioners is charged to "represent the public interest in providing hospital and medical care in the district." La. Rev. Stat. § 46:1054(A)(1). It must

4

"make, alter, amend, and promulgate rules and regulations governing the conduct of the hospital." Id. § 46:1055(A)(3). The commission is specifically authorized to "contract with or engage in a joint venture with a person, corporation, partnership, or group of persons to offer, provide, promote, establish, or sell any hospital health service." Id. § 45:1077. The Louisiana Legislature found that the hospital service districts had been competitively disadvantaged by the ability of private competitors to offer integrated health services. The disadvantages included the inability to discuss its business strategy in private and to enter into various business forms prevalent in the market, such as joint ventures. The Legislature sought to end both of these handicaps. See id. § 1071. The legislation directs that it is to be construed liberally to cure competitive disadvantages. See id. § 46:1071.

III

The Sherman Act prohibits contract combinations and conspiracies in restraint of trade. Nothing on its face qualifies its reach to states or shirks from such a regulatory bite. Nor does the statute expressly regulate states. In Parker v. Brown, 317 U.S. 341 (1943), the Supreme Court found that Congress had not made clear its intent to intrude on the sovereign powers of the states by subjecting their decisions to the constraints of the federal antitrust laws.

The doctrine of clear statement is vital to the concreteness of federalism – to the translation of principle to result – in

judicial decisionmaking, an observation made palpable by its wider use in the half century since Parker.  Strictly speaking, then, Parker immunity is an inapt description, for its parentage differs from the qualified and absolute immunities of public officials.  It does however function in certain important respects much like an immunity.  Like other immunities, Parker issues can often be resolved at an early stage of the litigation.  As Professors Areeda and Hovenkamp note, "State authorization is generally interpreted by an objective test that looks at the language of the statute; if other evidence is needed, it can be gleaned from legislative histories or state judicial decisions."  I Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 222b (1997).  It ordinarily produces a legal conclusion reviewed de novo.  See, e.g., Bolt v. Halifax Hosp. Med. Ctr., 980 F.2d 1381, 1384 (11th Cir. 1993).

While thus a convenient shorthand, "Parker immunity" is more accurately a strict standard for locating the reach of the Sherman Act than the judicial creation of a defense to liability for its violation.  The price of the shorthand of using similar labels for distinct concepts is the risk of erroneous migrations of principles.  Eleventh Amendment immunity, for example, is arguably a second source of protection for states from the federal antitrust laws.  Yet this does not mean that Parker immunity for state creatures follows the Eleventh Amendment, which in fact is far stingier in protecting instruments of local government.  That said,

while its limits are yet uncertain, the Parker doctrine is well developed and is quickly stated.

The Sherman Act does not reach states. Creatures of states, organized to provide local government, such as hospital districts and municipalities, are not sovereign states and are not necessarily beyond the reach of federal antitrust laws. See Town of Hallie v. City of Eau Claire, 471 U.S. 34 (1985). States, however, exercise their sovereign power in creating local entities for local government. As an incident of sovereignty, a state may govern directly or through its creatures, clothing them with the attributes and authority it chooses, including, if it desires, insulation from the Sherman Act. The Supreme Court addressed how a state accomplishes this in Hallie, insisting that states express their sovereign will regarding their role in the free market. The Court explained, "[T]he State may not validate a municipality's anticompetitive conduct simply by declaring it to be lawful." Id. at 39. Rather, a local entity seeking protection from the federal antitrust laws must prove "a state policy to displace competition." Id.

The correlative principle, and it is at the heart of this case, is that the deference due states as sovereigns resists any insistence upon a particular formula or expression, so long as it is clear from the nature of the policy articulated that the state contemplates such a displacement of competition. Hallie illustrates the point. The conduct at issue was refusing to supply

7

sewage treatment facilities outside city limits unless the outsiders agreed to be annexed to the city. See id. at 41. The state statute made no explicit reference to displacing competition. It was much more than a naked grant of authority to contract, however, explicitly authorizing the city to determine which areas to serve.

Similarly, in City of Columbia v. Omni Outdoor Advertising, 499 U.S. 372 (1991), the Supreme Court found the City immune from a charge that it had regulated billboards in an anticompetitive way. "The very purpose of zoning regulation," the Court reasoned, "is to displace unfettered business freedom in a manner that regularly has the effect of preventing normal acts of competition, particularly on the part of new entrants." Id. at 373.

The Omni Court declined to expound a clearer test for separating sufficient authorizations from insufficient ones. See id. at 372. Hallie clarified the "foreseeable result" test. The Court stated, "We think it is clear that anticompetitive effects logically would result from this broad authority to regulate." 471 U.S. at 42. The Court favorably cited its emphasis in New Motor Vehicle Board v. Orrin W. Fox Co., 439 U.S. 96, 109 (1978), that the statute inherently "displace[d] unfettered business freedom." Hallie, 471 U.S. at 42. Thus arises a distinction between a statute that in empowering a municipality necessarily contemplates the anticompetitive activity from one that merely allows a municipality to do what other businesses can do.

8

Applying this distinction here is straightforward. The Louisiana statute did not subject St. Luke's or any other businesses to the authority of the hospital service district. It merely added to the hospital service district's list of available powers, by enabling it to form joint ventures and conduct closed meetings. Not all joint ventures are anticompetitive. Thus, it is not the foreseeable result of allowing a hospital service district to form joint ventures that it will engage in anticompetitive conduct.

It is urged that Louisiana by statute granted to the hospital district power to compete and explicitly cloaked it with antitrust immunity. The argument is that the relevant statutes do more than authorize the formation of joint ventures; that joint ventures are authorized with "any person, corporation, partnership, or group of persons," to "sell any hospital health service," and that the statutes give this power "notwithstanding any other law to the contrary." La. Rev. Stat. § 46:1077. The argument continues that a strict textual reading places the Sherman Act within "any other law to the contrary." It reminds that § 46:1071 explicitly instructs that we are to construe the provisions "liberally" to promote the goal of allowing "a hospital service district to compete effectively and equally."

As we read the statute, the word "equally" qualifies "effectively," making clear that the statute's purpose is to level

the playing field but no more. In § 1077, leveling the playing field is tantamount to allowing the hospital service district to form joint ventures just as other corporations can, not to allowing formation of joint ventures that with any other lineage would be anticompetitive. The same is true in providing exception to open meeting laws to discuss market strategies. In context, the reference to any other law responds to Louisiana's general restrictions on the activities of its public corporations. These are not the signals of insulation. They tell us the opposite.

This is the approach the Ninth Circuit took in Lancaster Community Hospital v. Antelope Valley Hospital District, 940 F.2d 397 (9th Cir. 1991). Lancaster rejected a claim of antitrust immunity, observing that "when there are abundant indications that a state's policy is to support competition, a subordinate state entity must do more than merely produce an authorization to 'do business' to show that the state's policy is to displace competition." Id. at 403.

Nor is it inconsistent with Coastal Neuro-Psychiatric Associates v. Onslow Memorial Hospital, Inc., 795 F.2d 340 (4th Cir. 1986), or Federal Trade Commission v. Hospital Board of Directors, 38 F.3d 1184 (11th Cir. 1994). The Fourth Circuit case involved a statute, N.C. Gen. Stat. § 131E-85(a), giving hospitals the power to determine which physicians may practice in them. See 795 F.2d at 341. The court found that the Hospital had immunity from antitrust claims in refusing to allow some physicians to use

10

its equipment. Indeed the result was compelled by <u>Hallie</u>'s holding that the right to select districts to serve entailed the right not to serve a particular district.

The Eleventh Circuit's decision lies closer to the margin. In defining the foreseeability test, the court held "that the anticompetitive conduct [need only] be reasonably anticipated, rather than the inevitable, ordinary, or routine outcome of a statute." 38 F.3d at 1190-91. The court's application of its foreseeability test, however, is broadly consistent with the result here. In finding antitrust immunity, the court emphasized that when the legislature authorized a hospital to acquire other hospitals, it already knew that the hospital was a monopoly. <u>See</u> <u>id.</u> at 1192. That is the polar opposite of this case, in which the state sought to eliminate a competitive disadvantage suffered by the public hospital and instead establish a market in which the hospital could compete on equal terms. The Eleventh Circuit, though, loses much of its persuasive force by skating close to an overly lax view of the necessity of expressed legislative will. This is so because implementing federalism here produces a rule of construction with two sides – a path to be traversed because federalism is disserved by straying off in either direction.

First, courts will not police states to insist that its legislatures use words federally dictated. We will find a purpose to insulate local government when language and context fairly locate a state policy to displace competition. Second – the other

11

side – is that courts will not infer such a policy to displace competition from naked grants of authority. These are the enabling statutes by which myriad instruments of local government across the country gain basic corporate powers. To infer a policy to displace competition from, for example, authority to enter into joint ventures or other business forms would stand federalism on its head. A state would henceforth be required to disclaim affirmatively antitrust immunity, at the peril of creating an instrument of local government with power the state did not intend to grant. The immediate practical effect would be the extension of the Parker principle downward, contrary to the teaching that local instruments of government are subject to the Sherman Act.

V

In Martin, we confronted a statutory grant of authority to a hospital board. That entity also operated under a certificate of necessity by which the State of Mississippi expressed its intent that its creature be a sole supplier of a medical service. The district court here read Martin to find Parker immunity from the enabling statute alone – without adding the certificate of necessity to the mix. That reading, as we have explained, is no longer valid, if it ever was. Martin read at its best drew upon the complete context of the legislation, including the role of a certificate of necessity. So read, its result could be reached by the decisional path we mark today, albeit by a journey at its edge.

REVERSED AND REMANDED.

12