United States Court of Appeals,

Fifth Circuit.

No. 97-60254

Summary Calendar.

James P. MARTIN, Plaintiff-Appellant,

v.

MEMORIAL HOSPITAL AT GULFPORT, Wray Anderson, Mitchell Salloum,
Edward Reid, and Myrtis Franke, Defendants-Appellees.

Dec. 30, 1997.

Appeal from the United States District Court for the Southern
District of Mississippi.

Before JOLLY, BENAVIDES and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

I.

FACTS & PROCEDURAL HISTORY

For the second time this case has found its way to this Court
on appeal.[1]  The appellant Dr. James P. Martin brought this action
challenging a certain monopoly created over the provision of
out-patient, kidney dialysis in Harrison County, Mississippi.
Mississippi law prohibits the operation of an End Stage Renal
Disease ("ESRD") Unit without first obtaining a certificate of need
from the state department of health.  Two certificates of need were
issued for ESRD units in Harrison County.  MHG acquired control of

---

[1]This Court's disposition of the first appeal in this case may
be found at *Martin v. Memorial Hospital at Gulfport (Martin I)*, 86
F.3d 1391 (5th Cir.1996).  For the most part, the factual and
procedural summary presented here is borrowed from *Martin I.*

those units from Singing River Hospital System and began offering out-patient kidney dialysis in 1981. Thereafter, MHG entered into an exclusive medical director contract with Dr. Douglas Lanier, whereby only Dr. Lanier or his designated representative could perform chronic, out-patient dialysis in the hospital's ESRD units. In 1986, Dr. Martin, a nephrologist, was successfully recruited by MHG and Dr. Lanier, and he became associated with Dr. Lanier. Dr. Martin was granted full medical staff privileges at MHG and all of its clinics. It appears, however, that, even before being granted full medical privileges by MHG, Dr. Martin already had access to the hospital's ESRD units, because he was Dr. Lanier's designated representative under the exclusive medical director contract. This meant that Dr. Martin could treat his chronic dialysis patients in the hospital's ESRD units without having to refer them to Dr. Lanier for dialysis.

In November, 1988, Dr. Lanier and Dr. Martin separated their practices. Thereafter, in March, 1989, Dr. Martin attempted to admit a patient for chronic, out-patient, kidney dialysis at MHG's ESRD unit. MHG refused to allow Dr. Martin to perform the dialysis based on its exclusive contract with Dr. Lanier. Dr. Martin then wrote the MHG board of trustees asserting his alleged right to render dialysis to his patients at MHG's ESRD unit. On June 26, 1989, MHG's board of trustees considered the question of Dr. Martin's access to its ESRD unit. The board passed a resolution reaffirming the exclusive medical director contract with Dr. Lanier

and interpreting that contract to mean that only a physician in practice with and under the supervision and control of Dr. Lanier could perform chronic, out-patient, kidney dialysis in the hospital's ESRD units. In November, 1990, Dr. Martin's medical staff privileges at MHG were renewed with the exception of the privilege of providing chronic, out-patient dialysis in the ESRD unit. Therefore, Dr. Martin retained the authority to admit patients to the hospital and perform in-patient dialysis, but he must refer patients to the medical supervisor or his designated representative for out-patient dialysis at MHG's ESRD units.

When the board passed this resolution, no certificates of need had been issued by the state department of health for any ESRD units in Harrison County aside from those owned and operated by MHG. Therefore, any nephrologist not associated with Dr. Lanier, had to refer his patients to Dr. Lanier for chronic, out-patient dialysis or send them to a clinic in another county, unless the nephrologist could obtain a certificate of need from the state department of health and start her/his own ESRD unit.

Faced with this dilemma, Dr. Martin filed suit in the district court in 1990 against MHG and its board of trustees alleging that they had violated federal antitrust laws, violated his constitutional due process rights, interfered with his contractual relationships with his patients, and violated Mississippi antitrust law. MHG and the board moved for summary judgment claiming: immunity from federal antitrust law under the state action

doctrine;  immunity from damages for anticompetitive conduct under the Local Government Antitrust Act, 15 U.S.C. §§ 34, 36;  that Dr. Martin was not deprived of a property or liberty interest without due process of law;  that they acted in accordance with Mississippi law and therefore did not violate Mississippi antitrust law;  and that the board members are entitled to qualified immunity on Dr. Martin's constitutional due process and state law claims.  The district court held that the defendants were immune from money damages but not from injunctive relief, attorney's fees and court costs under the Local Government Antitrust Act. 15 U.S.C. § 35. The district court rejected the defendants' claim of immunity from federal antitrust law under the state action doctrine.  The district court rejected MHG's motion for summary judgment on Dr. Martin's due process claims, state law antitrust claims and tortious interference claims.  However, the district court granted the individual board members' motion for summary judgment on Dr. Martin's due process claims and state law claims, based on their defense of qualified immunity.

MHG and the board members appealed assigning the following errors:  the district court's refusal to grant summary judgment on the federal antitrust claims under the state action doctrine of *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943); the district court's refusal to grant summary judgment on Dr. Martin's § 1983 due process claims and Dr. Martin's state antitrust and tortious interference claims.  Dr. Martin cross-appealed

challenging: the district court's grant of limited immunity under the Local Government Antitrust Act; the district court's holding that the individual board members enjoyed qualified immunity from Dr. Martin's constitutional due process claims and his state antitrust and tortious interference claims. This Court reversed the district court and held that MHG and the board members were shielded from federal antitrust law by the state action doctrine. *Martin v. Memorial Hospital at Gulfport (Martin I),* 86 F.3d 1391, 1398-1400 (5th Cir.1996). This Court did not reach any of the other issues decided by the district court, as they were interlocutory in nature. *Id.* at 1401.

On remand, MHG filed a renewed motion for summary judgment on all remaining claims.[2] The district court reversed itself and held that summary judgment was appropriate on the remaining claims against MHG. Dr. Martin takes this appeal asserting the following errors:

1. The district court erred by granting summary judgment against Dr. Martin on his § 1983 due process claims against MHG;

2. The district court erred by holding that the individual board members enjoyed qualified immunity from Dr. Martin's constitutional due process claims;

3. The district court erred by holding that the individual board members were immune from Dr. Martin's state law claims.

4. The district court erred by granting summary judgment against Dr. Martin on his state law antitrust and tortious interference claims;

---

[2]Specifically, MHG asked the district court for summary judgment on Dr. Martin's constitutional due process claims, and state law antitrust and tortious interference claims.

## II.

## STANDARD OF REVIEW

This Court reviews a district court decision to grant summary judgment *de novo,* applying the same standard as the district court. *Wynn v. Washington National Insurance Company,* 122 F.3d 266, 268 (5th Cir.1997), *citing Bodenheimer v. PPG Indus., Inc.,* 5 F.3d 955, 956 (5th Cir.1993).

## III.

## LAW & ANALYSIS

## A.

## Procedural Due Process

The due process clause provides a mechanism by which a persons property or liberty may not be permanently diminished or abrogated without first being accorded that procedural protection designed to ensure a principled and even-handed examination of the basis for any such deprivation. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985); *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 569-70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 599, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972). By its own terms, the due process clause is not implicated unless an individual's property or liberty interests are threatened.

## *i.*

## *Property Interest*

The district court correctly recognized that procedural due process is a positivist notion, designed to protect property interests, existing not by force of the due process clause itself, but established by reference to some independent source, such as state law or contract. *Roth, supra,* 408 U.S. at 577, 92 S.Ct. at 2709; *Perry v. Sindermann, supra,* 408 U.S. at 601, 92 S.Ct. at 2699. The extent to which an individual interest is a property interest protected by the due process clause must be determined by an examination of the source of the interest. In cases such as this, where the interest is created by some state law or contract, the limitations of the interest are determined by examination of the state law or contract. *Loudermill, supra,* 470 U.S. at 538, 105 S.Ct. at 1491, *citing Roth, supra,* 408 U.S. at 577, 92 S.Ct. at 2709, *and Paul v. Davis,* 424 U.S. 693, 709, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976).

Appellant has argued that the source of his property interest in continued access to MHG's ESRD units lies in MHG's extension to him of full medical staff privileges, when he became associated with Dr. Lanier. MHG's own by-laws require notice and a hearing before a physician's previously granted or extended medical staff privileges may be taken away. Therefore, if Appellant's continued access to MHG's ESRD units may be considered part of the full medical staff privileges accorded to him when he first became associated with Dr. Lanier, then by hospital policy and by constitutional guarantee he may not be deprived of that access

without notice and a hearing. *Loudermill, supra,* 470 U.S. at 541, 105 S.Ct. at 1493, *citing Arnett v. Kennedy,* 416 U.S. 134, 167, 94 S.Ct. 1633, 1650, 40 L.Ed.2d 15 (1974) (Powell, J., concurring in part and dissenting in part).

However, Appellant misconceives the source of his property interest in access to MHG's ESRD units. The source of that interest is not the full medical staff privileges accorded Appellant. Indeed, there is no evidence that anyone with full medical staff privileges at MHG has access to the ESRD units to perform chronic, out-patient, kidney dialysis on their own patients. The grant of full medical staff privileges to Appellant must be construed in light of the pre-existing exclusive medical director contract with Dr. Lanier, and therefore, must be understood not to include access to the ESRD units for out-patient, kidney dialysis.

The true source of Dr. Lanier's access to the ESRD units for chronic, out-patient, kidney dialysis of his own patients was the exclusive medical director contract with Dr. Lanier. As we have previously pointed out, property interests are "created and their dimensions are defined by existing rules or understandings ..." *Roth, supra,* 408 U.S. at 576, 92 S.Ct. at 2709. The exclusive medical director contract with Dr. Lanier provided that only Dr. Lanier or his designated representative (Dr. Martin) could perform chronic, out-patient, kidney dialysis in MHG's ESRD units. Therefore, we may say that the scope of Dr. Martin's property

interest was limited to his association with Dr. Lanier.[3] Constitutionally, what this means for Dr. Martin is that he could not be deprived of continued access to MHG's ESRD units without notice and a hearing, so long as he was Dr. Lanier's designated representative. Once Appellant's association with Dr. Lanier ended, the property interest created by the contract and the concomitant constitutionally guaranteed procedural safeguards were extinguished. Therefore, Appellant has suffered no deprivation of a property interest protected by the due process clause, and summary judgment was appropriate on that claim.

*ii.*

*Liberty Interest*

"The Due Process Clause ... protects an individual's liberty interest which is viewed as including an individual's freedom to work and earn a living and to establish a home and position in one's community." *Cabrol v. Town of Youngsville,* 106 F.3d 101 (5th Cir.1997), *citing Roth, supra,* 408 U.S. at 572, 92 S.Ct. at 2706-07. "It requires no argument to show that the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [fourteenth] Amendment to secure." *Phillips v. Vandygriff,* 711 F.2d 1217, 1222 (5th Cir.1983), *quoting Truax v. Raich,* 239 U.S. 33, 41, 36 S.Ct. 7, 10, 60 L.Ed. 131 (1915). *See*

---

[3]Nothing in this record compels the illogical conclusion that Dr. Martin could end his association with Dr. Lanier but continue to be Dr. Lanier's designated representative.

*also: Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923) ("Without doubt, ["liberty' in the fourteenth amendment] denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life ..."); *and Schware v. Board of Bar Examiners,* 353 U.S. 232, 238-39, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957) ("A state cannot exclude a person from the practice of law or from any other occupation ... for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment.").

Therefore, loss of access to MHG's ESRD units might deprive Appellant of a constitutionally protected liberty interest if that loss "effectively foreclose[d] [Dr. Martin from] practicing in the area ..." *Daly v. Sprague,* 675 F.2d 716, 727 (5th Cir.1982), *quoting Christhilf v. Annapolis Emergency Hospital Ass'n, Inc.,* 496 F.2d 174, 178 (4th Cir.1974). The cases reveal three forms of state action that might result in this type of foreclosure from practicing in the area. First, Appellant might be foreclosed from practicing in the area, if the loss of access to MHG's ESRD units stigmatized him and so damaged his reputation in the community that he could not earn a living as a nephrologist. *See Roth, supra,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548; *Paul v. Davis, supra,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405; *Codd v. Velger,* 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977). That is not the case here, nor is this permutation urged by Appellant. Second,

Appellant might be foreclosed from practicing as a nephrologist in Harrison County, Mississippi, if he were *de jure* or *de facto* denied a license for practicing as a nephrologist. *See Schware, supra,* 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796, and *Phillips v. Vandygriff,* 711 F.2d 1217 (5th Cir.1983). This case presents no licensing question. Finally, Appellant might be foreclosed from practicing as a nephrologist in Harrison County, Mississippi, if such foreclosure is the natural consequence of "denying [Appellant] collateral credentials necessary for pursuing [his] occupation ..." *Phillips v. Vandygriff,* 711 F.2d at 1223, *citing Greene v. McElroy,* 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959) (denial of security clearance practically necessary for employment as defense contractor), *and Sosa v. Board of Managers of Val Verde Memorial Hospital,* 437 F.2d 173 (5th Cir.1971) (exclusion of physician from hospital staff privileges).

Recognizing the general principle that the right "to engage in the common occupations of life" is a protected liberty interest, we decline to find that Dr. Martin was deprived of any right to procedural due process. In the case of all such state-created monopolies for the provision of specialized health care services, some specialists will be "effectively foreclose[d] [from] practicing in the area" by "denying [them] collateral credentials necessary for pursuing [their] occupation." That is the nature of a monopoly. Since the right to be a nephrologist is a liberty interest, every time the State of Mississippi or one of its

political subdivisions creates a monopoly over chronic, out-patient, kidney dialysis, as permitted by state law and by *Parker v. Brown, supra,* it will necessarily deprive certain nephrologists of their liberty interests. The Fourteenth Amendment would generally require the state to provide a due process hearing to an excluded local nephrologist.

However, an exception to the procedural due process requirement is recognized under these circumstances. Generally applicable legislative and quasi-legislative decisions, wherein the competency or integrity of the individual appellants is not in question, are not subject to procedural due process constraints, even though they result in a deprivation of a recognized liberty interest. Rather, such decisions are subject only to substantive due process analysis. *Nolan v. Ramsey,* 597 F.2d 577, 580 (5th Cir.1979), *citing Bi-Metallic Investment Co. v. State Board of Equalization,* 239 U.S. 441, 36 S.Ct. 141, 60 L.Ed. 372 (1915); *Nordgren v. Hafter,* 616 F.Supp. 742, 756 (S.D.Miss.1985). As the Supreme Court noted, "[t]here must be a limit to individual argument in such matters if government is to go on." *Bi-Metallic, supra,* 239 U.S. at 445, 36 S.Ct. at 142. This rule reflects a judgment that the liberty interests of the individual, otherwise protected by due process, must not stymie the practical ability of legislative bodies to govern. Therefore, we choose not to saddle the State of Mississippi or its political subdivision with the burden of preemptively providing a hollow procedural mechanism for

challenging an otherwise valid anti-competitive practice. We conclude that, even if Dr. Martin was deprived of a liberty interest, he is not entitled to procedural due process, because that deprivation occurred as a result of a quasi-legislative decision not based on his individual competency or qualifications as a nephrologist. Hence, summary judgment was appropriate on this issue.

B.

Substantive Due Process

In cases such as this, where no fundamental right is implicated, the due process clause, of its own force, requires at a minimum that state action be supportable by some legitimate goal and that the means chosen for its achievement be rational, i.e., it is of no consequence that the state's method is over-inclusive or under-inclusive, so long as its legitimate goal may be attained by the means chosen. *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986) ("Due Process Clause ... was intended to secure the individual against arbitrary action of government"); *Brennan v. Stewart,* 834 F.2d 1248, 1255 (5th Cir.1988) ("The conceptual essence of "substantive' due process is the notion that the Due Process Clause—in addition to setting procedural minima for deprivations of life, liberty, or property—bars outright "certain government actions regardless of the fairness of the procedures used to implement them'."). *See also Neuwirth v. Louisiana State Bd. of Dentistry,* 845 F.2d 553,

558 (5th Cir.1988).

MHG has offered numerous reasons for the decision to enter into an exclusive arrangement with Dr. Lanier. For the most part they depend on the benefits to be obtained from uniformity or standardization of patient care and clinical administration. If nothing else, having a single doctor administer all the chronic, out-patient dialysis is logistically and legally desirable. As with most large service providers, centralization of power is essential to quality control and to limitation of potential liability. The temptation to make a single individual responsible for patient care and in turn responsible to the hospital's administration was too great to resist and in this case was perfectly legitimate. At least in part the goal of this exclusive arrangement was to ensure that all patients received the same high quality dialysis treatment. It is certainly rational to believe that such uniformity of care can be better achieved if the care is delivered to each patient under the control of the same doctor. Therefore, the exclusive arrangement between MHG and Dr. Lanier is not arbitrary or capricious and does not violate Dr. Martin's right to substantive due process.

## C.

### Immunity

The Appellant argues that the individual board members did not enjoy immunity from his constitutional due process claims or his state law antitrust and tortious interference claims.

*Due Process Claims*

We have determined that the evidence does not make out a material issue of fact as to whether Appellant has suffered an impermissible deprivation of a protected property or liberty interest.  Furthermore, we are convinced that the exclusive arrangement between MHG and Dr. Lanier, as a matter of law, does not violate Appellant's right to substantive due process. Therefore, the question of the individual board members' immunity from Appellant's due process claims is moot.

*ii.*

*State Law Claims*

When the events at the center of this case occurred, under Mississippi law, "[p]ublic officials [had] qualified immunity in a civil action when they ... perform[ed] functions which [were] discretionary in nature."  *Webb v. Jackson,* 583 So.2d 946, 949 (Miss.1991).  However, a public official

> has no immunity to a civil action for damages if his breach of a legal duty causes injury and (1) that duty is ministerial in nature, or (2) that duty involves the use of discretion and the governmental actor greatly or substantially exceeds his authority and in the course thereof causes harm, or (3) the governmental actor commits an intentional tort.

*Mohundro v. Alcorn County,* 675 So.2d 848 (Miss.1996), *quoting Grantham v. Mississippi Dept. of Corrections,* 522 So.2d 219, 225 (Miss.1988). Hence, "[t]he "ministerial/discretionary' distinction remain[ed] intact in [Mississippi]." *Barrett v. Miller,* 599 So.2d 559, 567 (Miss.1992).  Appellant and Appellees seem to be in

agreement that the functions performed by the members of the board were discretionary, and rightly so. Therefore, the board members enjoyed immunity unless they "greatly or substantially exceeded their authority" or "commit[ted] an intentional tort".

As this Court recognized in *Martin I,* the Mississippi legislature "authoriz[ed] a hospital to enter an exclusive contract with a single individual to operate any aspect, division or department of its operations, including its ESRD facility ..." 86 F.3d at 1399. Therefore, we cannot say that the board members exceeded their authority, since they did exactly what they were authorized to do by statute. See Miss.Code Ann. § 41-13-35 (1972).

The board's entry into an exclusive contact with Dr. Lanier and its subsequent reiteration of the terms of that contract do not amount to intentional tortious interference with contract. Under Mississippi law, to show intentional interference with contract one must prove:

> (1) that the acts were intentional and wilful; (2) that they were calculated to cause damage to the plaintiffs in their lawful business; (3) that they were done with the unlawful purpose of causing damage and loss, without right of justifiable cause on the part of the defendant (which constitutes malice); and (4) that actual damages and loss resulted.

*Irby v. Citizens Nat'l Bank of Meridian,* 239 Miss. 64, 121 So.2d 118, 119 (1960).

In this case, Appellant cannot show that the exclusive contract with Dr. Lanier was calculated to cause him harm, because the contract pre-dates his association with Dr. Lanier and MHG.

Appellant insists that, although the contract itself did not exclude him by name, the board's interpretation of the contract was made to exclude him specifically.  Appellant therefore argues that the board acted intentionally with Appellant in mind.  It is true that the contract does not exclude him specifically.  The contract excludes all but Dr. Lanier's designated representative. Therefore, Appellant was excluded by force of the contract alone, when he separated from Dr. Lanier, because he could not continue to be Dr. Lanier's designated representative.  Hence, we cannot say that the Board committed an intentional tort toward Appellant by reiterating the effect of a contract entered into by the board long before Appellant was in the picture.  Since the board members performed discretionary functions without malice toward Appellant and within their statutory authority, they enjoy qualified immunity from Appellant's state law claims.

D.

Summary Judgment on Appellant's State Law Claims

*i.*

*Tortious Interference*

As we have noted above, Appellant cannot, on these facts, make a case for intentional interference with contract, because the alleged interference (exclusion), generally applicable in nature, occurred before Appellant was even associated with MHG or Dr. Lanier.

*ii.*

*State Antitrust Law*

The district court granted summary judgment on this claim, because it realized that allowing liability here under Mississippi antitrust law would be inconsistent with the Mississippi statutes which, according to this Court, "demonstrate that the state legislature clearly contemplated anticompetitive conduct ..." *Martin I,* 86 F.3d at 1399. The district court is correct. It would be counter-intuitive to allow liability under one state law for doing the very thing that this Court has held to be within the contemplation of another law of the same state. Until the Mississippi Supreme Court says otherwise, this Court will treat this example of anticompetitive conduct contemplated by Mississippi law as an exception to Mississippi's antitrust law.

IV.

CONCLUSION

Finding no error in the district court's summary judgment in favor of Appellees, we therefore affirm.

AFFIRMED.