# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 17, 2025

Lyle W. Cayce
Clerk

No. 24-20286

———————

Jose E. Amstutz,

*Plaintiff—Appellant*,

*versus*

Harris County; Sylvia Trevino, Precinct 6 Constable,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:23-CV-1787

———————————————————————

Before Graves, Higginson, and Wilson, *Circuit Judges*.
Stephen A. Higginson, *Circuit Judge*:

Plaintiff-Appellant Jose E. Amstutz sues Defendants-Appellees Harris County and Constable Sylvia Trevino, alleging claims under the Age Discrimination in Employment Act and 42 U.S.C. § 1983 arising from his termination in July 2022. Amstutz was employed as a police officer by Harris County Precinct 6 for less than a year when his wife filed a police report alleging domestic abuse by Amstutz. Amstutz was placed on leave and later terminated.

No. 24-20286

The district court dismissed Amstutz's ADEA claims because he had failed to exhaust and failed to respond to the timeliness challenge. It dismissed Amstutz's § 1983 claims on the basis that he had not pleaded a protected property interest in his at-will employment. Because the district court's determinations were correct on the law and the record, we AFFIRM.

## I.

Amstutz worked as a law enforcement officer in Defendant-Appellee Harris County Constable Office's Precinct 6 from August 21, 2021, through July 26, 2022. Amstutz alleges that his wife, Nickolette, had falsely accused him of domestic violence in the past and that he informed his supervisors, including Constable Trevino, about the "potential for false allegations in the future."

On June 28, 2022, Nickolette filed a police report alleging domestic abuse. On the same day, June 28, the Houston Police Department notified the Constable's Office of the police report. Amstutz alleges that on June 29, he notified his supervisor and attempted to contact the Internal Affairs Division (IAD) of the Constable's Office. On June 29, 2022, the Constable's Office began an internal investigation related to the allegations, placed Amstutz on administrative leave, and provided Amstutz with a list of the potential policy violations being investigated, which included: failure to report an off-duty incident involving the police, misconduct, unlawful or offensive conduct, conduct unbecoming of an employee, untruthfulness, and failure to exercise sound judgment. These potential violations were based not just on the criminal assault report, but also on six calls for emergency services made by Nickolette in the preceding month. After the IAD found that Amstutz had violated these policies by, among other things, failing to report the calls, Constable Trevino terminated Amstutz's employment with Harris

2

County on July 26. On August 2, Harris County filed the required F-5 report of separation for Amstutz with the Texas Commission on Law Enforcement (TCOLE), indicating a General Discharge.[1] On August 4, after the F-5 report had been filed, the Harris County District Attorney's Office declined to pursue criminal charges against Amstutz; the record suggests that the Constable's Office was informed of this decision in mid-August.

Following his termination, Amstutz alleges he was unable to find other law enforcement employment despite his experience and qualifications, and suggests this difficulty was caused by the General Discharge. On August 15, 2022, Amstutz petitioned TCOLE to change his F-5 report designation from General Discharge to Honorable Discharge. The matter was referred to the State Office of Administrative Hearings.

On October 23, 2023, an Administrative Law Judge found that the evidence did not establish that Amstutz had violated any of the Constable Office's policies because Amstutz had "immediately notif[ied] the Constable's Office of his wife's allegation of criminal assault" but he was not required to notify his supervisor of the other incidents because "[n]one of the calls involved family violence or allegations of any criminal activity." The ALJ ordered Amstutz's discharge status changed from General to Honorable.

Separately, on January 19, 2023, Amstutz filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). He checked boxes for "sex," "age," "retaliation," and "other" discrimination, and in his factual statement charged that he was fired by "females with a clear anti male prejudice" who were "reversely prejudiced

---

[1] Other discharge types include Honorable Discharge and Dishonorable Discharge.

No. 24-20286

against masculine men." He received a right-to-sue notice on February 14, 2023.

On May 15, 2023, within the 90-day window following receipt of his right-to-sue letter, Amstutz sued Harris County, the Thin Blue Line Foundation, and Nickolette Amstutz, alleging discrimination and retaliation under Title VII. On July 12, 2023, Amstutz filed a First Amended Complaint, replacing the Foundation and Nickolette with Constable Trevino and Chief Deputy Lillian Lozano as defendants and adding claims of age discrimination under the Age Discrimination in Employment Act (ADEA) and constitutional rights violations actionable under 42 U.S.C. § 1983. The defendants moved to dismiss on the basis that Amstutz had failed to plead the necessary elements of his claims. In his opposition to the motions to dismiss, Amstutz argued that his termination was arbitrary and capricious, and motivated by age and gender discrimination; in particular, he alleged that Constable Trevino was prejudiced against middle-aged men on the basis that Amstutz was replaced as K-9 Deputy by a younger and less experienced male officer.

In the separate proceedings before the State Office of Administrative Hearings, the Administrative Law Judge found that Constable Trevino was the policymaker for her office. Following this determination, on November 1, 2023, Amstutz filed a Second Amended Complaint before the federal district court that alleged only an age discrimination claim against Harris County under the ADEA, and 42 U.S.C. § 1983 claims against Harris County and Constable Trevino. Harris County and Constable Trevino again moved to dismiss. The district court granted the motion to dismiss on the basis that Amstutz had failed to exhaust his ADEA claim and, regardless, had failed to show his claim was timely, and had failed to adequately plead a protected property interest in continued employment to proceed with his § 1983 claims. Amstutz appealed both determinations.

## II.

"Dismissals for failure to state a claim are reviewed de novo." *Cody v. Allstate Fire & Cas. Ins. Co.*, 19 F.4th 712, 714 (5th Cir. 2021). At this stage in the proceedings, the panel must "accept all well-pleaded facts as true, drawing all reasonable inferences in the nonmoving party's favor." *Mayfield v. Currie*, 976 F.3d 482, 485 (5th Cir. 2020). Dismissal is appropriate if a plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.

### A.

In general, "[a] party who inadequately briefs an issue is considered to have abandoned the claim." *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994); *Rollins v. Home Depot USA, Inc.*, 8 F.4th 393, 397 (5th Cir. 2021). "To be adequate, a brief must 'address the district court's analysis and explain how it erred.'" *SEC v. Hallam*, 42 F.4th 316, 327 (5th Cir. 2022) (quoting *Rollins*, 8 F.4th at 397 n.1); *see Guillot ex rel. T.A.G. v. Russell*, 59 F.4th 743, 751 (5th Cir. 2023) (the appealing party should "attempt to rebut [the] judgment"). Where a party's "opening brief barely 'address[ed] the district court's analysis' and wholly neglected to 'explain how it erred,'" *Smith v. Sch. Bd.*, 88 F.4th 588, 594 (5th Cir. 2023) (quoting *Russell*, 59 F.4th at 751), we have found such an argument inadequate to preserve the issue. And a party's failure to defend a claim before the district court "constitutes waiver on appeal." *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1010 n.70 (5th Cir. 2023) (quoting *Magee v. Life Ins. Co. of N. Am.*, 261 F. Supp. 2d 738, 748 n.10 (S.D. Tex. 2003)).

Harris County argues that Amstutz failed to exhaust his administrative remedies because although he checked the "age" box on his EEOC charge, his factual statement did not make any allegations related to age. Harris County also argues that, even if Amstutz had exhausted before the EEOC, the district court found that he waived his ability to contest whether his ADEA claim was timely.[2] In his briefing before us, Amstutz does not address the district court's finding of waiver—that because he failed to address the timeliness challenge, he "waive[d] opposition to that argument." Although Amstutz addresses the issue of timeliness on the merits, he does not address the district court's analysis of waiver or provide any reason to excuse waiver, and thus we dismiss the ADEA claim without reaching its merits.

## B.

The district court dismissed Amstutz's § 1983 claims on the basis that he had not met the threshold of "pleading . . . that a constitutional right of the plaintiff has been violated." *See Baker v. McCollan*, 443 U.S. 137, 140 (1979). Amstutz argues that he "pleaded protected property and liberty interests in his continued employment." He appears to raise two arguments in support of such a property interest: first, that Lieutenant Paul Fernandez, an IAD officer, "assured him his job would be secure pending the outcome of the investigation . . . creat[ing] a reasonable expectation of continued employment absent just cause for termination[,]"and second, that "Constable Trevino knowingly ma[de] . . . false statements about Amstutz

---

[2] The 90-day requirement in 42 U.S.C. § 2000e-5(f)(1) is non-jurisdictional. *See Harris v. Boyd Tunica, Inc.*, 628 F.3d 237, 239 (5th Cir. 2010)) (citing *Espinoza v. Mo. Pac. R.R. Co.*, 754 F.2d 1247, 1248 n.1 (5th Cir. 1985)). We construe "the parallel provisions of the ADEA . . . consistently with Title VII." *Honeycutt v. Long*, 861 F.2d 1346, 1349 (5th Cir. 1988); *see also Sanchez v. Pac. Powder Co.*, 147 F.3d 1097, 1100–01 (9th Cir. 1998) (noting similarities between 42 U.S.C. § 2000e-5(f)(1) and 29 U.S.C. § 626(e)).

violating policy to justify his termination" in violation of "substantive due process."

"[T]he due process clause is not implicated unless an individual's property or liberty interests are threatened." *Martin v. Mem'l Hosp. at Gulfport*, 130 F.3d 1143, 1147 (5th Cir. 1997). Procedural due process is "designed to protect property interests" that "exist[] not by force of the due process clause itself, but [are] established by reference to some independent source, such as state law or contract." *Id.* A property interest for these purposes is more than "an abstract need," a "desire," or a "unilateral expectation" to continued employment. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). A claimant must show a "legitimate claim of entitlement" that is "acquired in specific benefits." *See id.* at 576–77. A property interest exists where there is no right to terminate without cause; "[c]onversely, an employee who is terminable at will generally has no constitutionally-protected property interest." *Stem v. Gomez*, 813 F.3d 205, 210 (5th Cir. 2016) (first citing *Bolton v. City of Dallas*, 472 F.3d 261, 264 (5th Cir. 2006); and then citing *Muncy v. City of Dallas*, 335 F.3d 394, 398–99 (5th Cir. 2003)).

The district court correctly found that Amstutz "does not identify any independent source of law from which he derives a property interest in his employment." Amstutz does not contest that employment in Texas is generally at-will and that his employment was at-will. *See Stem*, 813 F.3d at 213 (no property interest in Texas municipal police officer's continued employment even when the officer was ultimately not indicted for conduct that formed basis of termination). Instead, in his response to the underlying motion to dismiss, Amstutz alleges that "[he] was told by Lt. Fernandez that the investigation would be complete and accurate and that the outcome would determine Amstutz' future with P6." Amstutz cites to no law that suggests that Lieutenant Fernandez's general assertion that claims will be investigated creates a property interest protected by the due process clause.

Our case law in fact holds directly to the contrary, as we recognized in *Stem* that "[a] right to an investigation . . . does not create a property right" and "conditioning an employee's removal on compliance with certain specified procedures does not necessarily mean that an employee has a substantive property right in continued employment." *Stem*, 813 F.3d at 213 (cleaned up).

Amstutz claims Lieutenant Fernandez "told [him] . . . the terms of his employment's continuing turned on 'the final report of HPD[.]'" But the full quote provided in the Second Amended Complaint is not an allegation that Fernandez promised Amstutz that a favorable final report would guarantee Amstutz's employment. Instead, Amstutz describes an interaction where he attempted to provide Lieutenant Fernandez with "a 12 page typed statement" which Fernandez declined to read, instead stating, "All I need is the final report of HPD[.]" With this context, it is clear that Amstutz has not pleaded a "*Sindermann* property interest."[3] Amstutz's Original, First, and Second Amended Complaints are devoid of allegations that Lieutenant Fernandez informed Amstutz that his employment would be terminated only if the investigation resulted in a charge or indictment.

Amstutz also argues that his "continued employment, if objectively based upon the representations of Constable Trevino or Paul Fernandez (IAD head chief), both authorized by Trevino to make personnel policy in the Precinct 6 Constable[']s [O]ffice, then the resulting property interest (*Perry*

---

[3] Amstutz repeatedly references *Perry v. Sindermann*, 408 U.S. 593 (1972), for the proposition that he has a property interest in his employment. But in *Sindermann*, the plaintiff "alleged that the [employer] had a de facto tenure program" as based on the "college's official Faculty Guide[.]" *Id.* at 600. This system of alleged "rules and understandings, promulgated and fostered by state officials" when applied to a group of faculty members could have created an entitlement in continued employment. *Id.* at 602. No such de facto arrangement is alleged here.

*v. Sindermann*) was a due process violation that would be remedied by remand to the agency for due process." Amstutz does not identify what protected interest, if any, could arise from this argument—especially because the decision was reviewed by a state agency that changed Amstutz's discharge from General to Honorable. Amstutz does not name a particular "personnel policy" that was violated, other than to argue that "Constable Trevino . . . changed her firing reason" after the Harris County District Attorney declined to prosecute Amstutz. But the District Attorney declined to prosecute *after* Amstutz had already been terminated and the F-5 report had already been filed.[4] Amstutz claims that the F-5 procedure "demonstrate[s] the existence of a system where termination requires cause," but the F-5 system, as described by the parties, appears to be the *opposite* of requiring termination for cause—a city can terminate officers without cause and simply list the discharge as Honorable.

"Procedural due process entitles a public employee with a property right in his employment to notice of the charges against the employee, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Fowler v. Smith*, 68 F.3d 124, 127 (5th Cir. 1995) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)). As the district court correctly observed, Amstutz "nowhere explains the source of property right to which procedural due process would attach." His claims against Constable Trevino fail.

Finally, Amstutz brings a *Monell* claim against Harris County. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) ("Local governing bodies . . . can be sued directly under § 1983 . . . where, as here, the action

---

[4] Insofar as Amstutz is arguing that Constable Trevino changed her reasoning before the Administrative Law Judge, that was not alleged in his complaints, and Amstutz has not cited any case law suggesting that such an action creates a property interest.

No. 24-20286

that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."). Amstutz argues that his "complaint adequately alleges that Constable Trevino, as the final policymaker for employment decisions in Precinct 6, established a pattern of arbitrary personnel actions and discriminatory practices."

"[T]o succeed on a *Monell* claim, a plaintiff must show 'that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right.'" *Doe v. Burleson Cnty.*, 86 F.4th 172, 176 (5th Cir. 2023) (quoting *Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017)). Amstutz has failed to plead a violation of a constitutional right because he has not asserted a constitutional right. The inquiry ends there, and thus there can be no *Monell* liability.

\* \* \*

We AFFIRM the district court's dismissal of the ADEA and § 1983 claims. Insofar as Amstutz appeals the district court's denial of leave to amend, we find no abuse of discretion and AFFIRM.