# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 21, 2026

Lyle W. Cayce
Clerk

————————

No. 25-11006

————————

Megatel Homes, L.L.C.; Cipriani Island Laguna Azure, L.L.C.,

*Plaintiffs—Appellants*,

*versus*

City of Mansfield, Texas,

*Defendant—Appellee*.

————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:24-CV-2295

————————————————

Before Haynes, Higginson, and Ho, *Circuit Judges*.

Stephen A. Higginson, *Circuit Judge*:

It is ORDERED that the petition for panel rehearing is GRANTED. The court's prior panel opinion is WITHDRAWN, and the following opinion is SUBSTITUTED.

Megatel Homes, L.L.C., and Cipriani Island Azure, L.L.C. (together, Megatel) sought to develop land outside the City of Mansfield, Texas (Mansfield or the City). To do so, Megatel needed retail water utility services from the Johnson County Special Utility District (JCSUD). But when Megatel requested retail water services, JCSUD conveyed that it was not

No. 25-11006

permitted to provide any without Mansfield's permission. Years of unsuccessful negotiations between Megatel and Mansfield ensued, resulting in this litigation. Assessing Megatel's Sherman Act claims and allegations of state-law violations, the district court concluded that state-action immunity prohibited Megatel's antitrust claims and declined to exercise supplemental jurisdiction. Because we conclude that the Texas Water Code does not clearly articulate and affirmatively express a state policy permitting Mansfield to act anticompetitively, and thus does not provide Mansfield with immunity, we REVERSE and REMAND.

I.

Megatel owns approximately 517 acres of land—the Cipriani Property—located to the southwest of Mansfield, in Johnson County, Texas. The land sits outside of the City's corporate boundaries but within its extraterritorial jurisdiction. Megatel sought to develop the Cipriani Property into a residential, mixed-use, and commercial development. To do so, it needed water—essential not only to the property's eventual habitability, but also as a prerequisite for additional steps in the development process, such as platting. Concomitantly, JCSUD has a certificate of convenience and necessity (CCN) for the land on which the Cipriani property sits. JCSUD must provide water services for developments in "all of its CCN territory," including the Cipriani Property.[1]

In 2009, JCSUD and Mansfield entered into an agreement focusing on the sale and delivery of water in JCSUD's CCN. In 2022, they amended the agreement, adding a "Restriction on Area of Utility Service" provision

---

[1] Mansfield represented to Megatel that it routinely provides water services to developments within the City and "significant portions of its exterritorial jurisdiction." However, it "does not currently have a CCN that authorizes it to provide retail water service to the Cipriani Development."

that prohibits JCSUD from "engag[ing] in retail or wholesale provision of water within the boundaries of Mansfield's [extraterritorial jurisdiction] . . . unless it secures the prior written consent of Mansfield, which may be withheld in Mansfield's sole discretion."

So, when Megatel sought to obtain retail water utility services, it had to deal with both JCSUD and Mansfield. When Megatel requested that JCSUD provide it with water utility services, JCSUD informed Megatel that it could not provide water services without Mansfield's approval because of its contractual obligations to the City.

As Megatel details in its complaint, that process has been—and continues to be—anything but easy. Mansfield confirmed that, if Megatel wanted water for development, it would need to comply with Mansfield's requirements. As the City told Megatel, "[I]f you control the tap you kinda control the world." For two and a half years, Megatel alleges it undertook "what ultimately proved to be fruitless negotiations with the City." Mansfield demanded that Megatel "consent to the annexation" of the Cipriani Property, permitting city control and taxation. Mansfield also required Megatel to pay "various and sundry development fees" without a "logical relationship" to the provision of water. Megatel eventually agreed to these terms, but "Mansfield refused to execute the proposed agreement" they had drawn up. Megatel then sought the Texas Public Utility Commission's assistance in compelling JCSUD to provide retail water service for the Cipriani Property.

Megatel filed suit against Mansfield—not JCSUD—in September 2024, asserting violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, as well as claims for tortious interference, fraud, and negligent misrepresentation under state law. Megatel sought declaratory relief and damages. Mansfield moved dismiss under Rules 12(b)(1) and

12(b)(6), asserting that the litigation was not ripe, that the City was entitled to state-action immunity, and that Megatel's state-law claims were either barred or not worthy of the district court's supplemental jurisdiction.

The magistrate judge recommended that the motion be granted in part and denied in part. In his view, Megatel's claims were ripe, but the City was entitled to state-action immunity. The magistrate judge also recommended that the district court decline supplemental jurisdiction over the remaining state law claims.

After considering objections from Megatel, the district court entered an order accepting the magistrate judge's findings and recommendations, granting in part and denying in part Mansfield's motion to dismiss. The district court concluded that, even if Megatel's Sherman Act claims were not barred by state-action immunity, Megatel had failed to allege "viable claims for relief under the Sherman Act against the City." The district court dismissed Megatel's Sherman Act claims with prejudice and its state claims without prejudice, declining to exercise supplemental jurisdiction. Megatel timely appealed.

## II.

We examine the district court's dismissal on state-action immunity grounds. The magistrate judge concluded that the Texas Water Code is a "sufficient expression of Texas's policy to displace federal antitrust law" such that Mansfield was entitled to state-action immunity. On appeal, Megatel asserts that Mansfield is not entitled to state-action immunity because Texas has not granted the City a right to provide water services in the area covering the Cipriani Property, "much less any right to veto or restrict" JCSUD's ability to do so.

No. 25-11006

A.

We review dismissal under Rule 12(b)(6) *de novo*. *Jack v. Evonik Corp.*, 79 F.4th 547, 561 (5th Cir. 2023). "To survive a motion to dismiss, the plaintiff's complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). We accept well-pleaded facts as true, construing them in the light most favorable to the plaintiff. *Id.*[2]

There are three contexts in which state-action immunity may be asserted: (1) where a state clearly exercises its sovereign powers, commonly known as *Parker* immunity after the Supreme Court's decision in *Parker v. Brown*, 317 U.S. 341 (1943); (2) where a state agency or municipality acts pursuant to a "clearly articulated and affirmatively expressed" state policy to replace competition with regulation; and (3) where a private party or state agency controlled by "participants of the market they regulate" meets the clear-articulation test and is subject to "active supervision" by the state. *Quadvest, L.P. v. San Jacinto River Auth.*, 7 F.4th 337, 346 (5th Cir. 2021) (internal quotation marks and citations omitted). Since "states regulate their economies in many ways not inconsistent with the antitrust laws, state-action immunity is disfavored." *Id.* (alteration adopted and internal quotation marks omitted) (quoting *FTC v. Ticor Title Ins. Co.*, 504 U.S. 621, 635–36 (1992)).

Mansfield asserts the type of immunity in the second camp. Our "inquiry involves two distinct questions: (1) Does state law authorize the

_____

[2] The parties dispute what materials we may consider on appeal. Because any materials outside the complaint would not alter our analysis, we need not address whether Megatel sufficiently referenced them.

5

defendant to engage in the challenged conduct?; and (2) Did the state authorize the challenged conduct with an intent to displace competition with regulation or monopoly service?" *Id.* (quoting 1A Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law 140, ¶ 225 (4th ed. 2013), and citing *F.T.C. v. Phoebe Putney Health System, Inc.*, 568 U.S. 216, 228 (2013)). State authorization to monopolize is "generally interpreted by an objective test that looks at the language of the statute; if other evidence is needed, it can be gleaned from legislative histories or state judicial decisions." *Surgical Care Ctr. of Hammond, L.C. v. Hosp. Serv. Dist. No. 1 of Tangipahoa Par.*, 171 F.3d 231, 234 (5th Cir. 1999) (en banc) (quoting 1 Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law, ¶ 222b (1997)).

The burden is on a municipality to "demonstrate that [its] anticompetitive activities were authorized by the state." *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 39 (1985); *see also Acoustic Sys., Inc. v. Wenger Corp.*, 207 F.3d 287, 294 (5th Cir. 2000) (describing the state-action doctrine as "a defense against liability"). Put differently, to assert state-action immunity, the "substate governmental entity must also show that it has been delegated authority to act or regulate anticompetitively." *Phoebe Putney*, 568 U.S. at 228.

## B.

The Texas Water Code establishes a "comprehensive regulatory system" to regulate "retail public utilities." Tex. Water Code § 13.001(c). Its statement of legislative policy and purpose explicitly states that "retail public utilities are by definition monopolies in the areas they serve" and that the "normal forces of competition that operate to regulate prices" are inconsistent with the "public interest" in the provision of water services. *Id.* § 13.001(a)–(b).

It also authorizes the Texas Public Utility Commission to issue a CCN "to a water utility, granting the utility the *exclusive right* to provide water service in a designated geographic area." *Dobbin Plantersville Water Supply Corp. v. Lake*, 108 F.4th 320, 323 (5th Cir. 2024) (emphasis added) (citing TEX. WATER CODE §§ 13.242, 13.244). "In exchange for that right, the utility must agree to 'render continuous and adequate service within the area,' and to 'serve every consumer.'" *Id.* (quoting TEX. WATER CODE § 13.250(a)). Except in specific circumstances, which Mansfield does not assert are applicable here, a utility may not "sell, assign, or lease" a CCN. TEX. WATER CODE § 13.251; *cf. id.* § 13.255 (permitting agreements between utilities and municipalities when a municipality incorporates or annexes an area).

The Texas Water Code thus conveys a clear intent to structure monopolies, *see* TEX. WATER CODE § 13.001, but confers that authority only to the utility granted a CCN by the state, via the Texas Public Utility Commission, *see id.* §§ 13.242, 13.244. That authority, we have said, is "exclusive." *Dobbin*, 108 F.4th at 323.

## C.

The district court concluded that Mansfield was entitled to state-action immunity because the Texas Water Code conveyed a clear intent to displace competition with monopoly. But the magistrate judge did not examine whether Mansfield itself was the intended beneficiary of that statutory authorization. That is, whether Mansfield—and not JCSUD— "ha[s] been delegated" the authority to act anticompetitively. *Phoebe Putney*, 568 U.S. at 228.

Mansfield has not demonstrated that Texas, through its water code, grants the city—and not JCSUD—the authority to monopolize. The parties agree that a CCN grants a water utility the "exclusive right" to provide water

in a geographic area, *Dobbin*, 108 F.4th at 323, and that the Cipriani Property is located within JCSUD's CCN. And the parties do not dispute that "the Texas Legislature clearly articulated in the Texas Water Code a state policy to displace competition in the market for retail water services." But the first step of our clear-articulation analysis is whether state law authorizes *the defendant* to engage in the challenged conduct. *See Quadvest*, 7 F.4th at 346.

In *Quadvest*, for example, our court examined whether the San Jacinto River Authority—a political subdivision created to "conserve, control, and utilize the storm and flood waters of the San Jacinto River"—was entitled to state-action immunity. *See id.* at 339–40. In assessing whether the River Authority was entitled to immunity, we first asked whether its "Enabling Statute authorized *its* entry into and enforcement of the challenged provisions." *Id.* at 347 (emphasis added). Similarly, in *Federal Trade Commission v. Phoebe Putney Health System, Inc.*, the Supreme Court examined whether Georgia had conferred on local hospital authorities the ability to acquire hospitals in a manner that substantially lessened competition. *See* 569 U.S. at 219–20. There too, the Supreme Court's analysis began with an assessment of the state Hospital Authorities Law, which permitted the creation of hospital authorities such as the defendant in the case. *See id.*

State-action immunity "attache[s] to the activities of local governmental entities" only "if they are undertaken pursuant to a 'clearly articulated and affirmatively expressed' state policy to displace competition." *Phoebe Putney*, 568 U.S. at 226 (quoting *Cmty. Commc'ns Co. v. Boulder*, 45 U.S. 40, 52 (1982)). The Texas Water Code grants the state's Public Utility Commission the authority to vest utilities with the exclusive right to provide water through a CCN. *See* Tex. Water Code §§ 13.242, 13.244. But the provision of law explicitly permitting monopolistic behavior

in the area a CCN covers specifies that "retail utilities are by definition monopolies in the *areas they serve*." *Id.* § 13.001(b)(1) (emphasis added).

Here, Texas granted a CCN for the area on which the Cipriani Property sits to JCSUD. Texas law clearly articulates and affirmatively expresses that JCSUD has the authority to use its powers anticompetitively. It does not grant Mansfield the same power. So, although Mansfield has demonstrated that Texas law evinces an intent to permit monopolies in water utilities, it has not shown that, for the Cipriani Property, state law permits it to act anticompetitively. Its failure to do so precludes the City from state-action immunity's benefit, at least at this early stage.

### III.

In its petition for panel rehearing, Mansfield argues that, separate from its determination on state-action immunity, the district court has already concluded that Megatel's Sherman Act claims do not survive the Rule 12(b)(6) phase. Mansfield accordingly suggests that this court may examine these claims on appeal. But the district court's one-sentence assessment of Megatel's Sherman Act claims, providing only that, even if Megatel's Sherman Act claims were not barred, "Plaintiffs have not alleged viable claims for relief under the Sherman Act," does not provide this court with a sound basis on which to examine those claims. We therefore think it is best to remand this issue to the district court for further development and explanation on this issue, rather than pass on it in the first instance. *See Copeland v. Wasserstein, Perella & Co.*, 278 F.3d 472, 485 (5th Cir. 2002) (remanding for "fuller explication of the court's ruling").

### IV.

Accordingly, we REVERSE the decision of the district court granting state-action immunity to Mansfield and REMAND for

No. 25-11006

consideration of Megatel's Sherman Act and state law claims consistent with this opinion.